820 F.2d 352
 8 Fed.R.Serv.3d 251, 14 Media L. Rep. 1370
 In re ALEXANDER GRANT & CO. LITIGATION, (ESM-1).
Appeal of NEWS AND SUN-SENTINEL CO. and John Edwards.
 No. 86-5223.
 United States Court of Appeals,
Eleventh Circuit.
 June 24, 1987.
 
 Ricki Tannen, Ferrero, Middlebrooks, Strickland, and Fischer, P.A., Ray Ferrero, Jr., Wilton L. Strickland, Ft. Lauderdale, Fla., for News and Sun-Sentinel Co.
 Jeffrey M. Weissman, Sparber, Shevin, Shapo, Heilbronner & Book, P.A., Miami, Fla., for Marvin L. Warner.
 Richard E. Brodsky, Paul, Landy, Beiley & Harper, P.A., Miami, Fla., for Alexander Grant Co.
 Appeal from the United States District Court For the Southern District of Florida.
 Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This appeal challenges a protective order denying non-parties access to discovery materials compiled in a series of complex securities actions consolidated for discovery proceedings. The protective order was issued at the request of the parties. The District Court for the Southern District of Florida declined to modify the order. The non-parties, as intervenors, argue on appeal that the district court abused its discretion. For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 E.S.M. Government Securities, Inc. (hereinafter E.S.M.) is a Florida corporation formerly engaged in the securities brokerage business in Fort Lauderdale, Florida. E.S.M. was a parent and holding company for several subsidiaries and specialized in term repurchase and reverse repurchase transactions involving government entities.[1] In the late seventies, E.S.M. retained the Alexander Grant & Company (hereinafter "Grant"), a public accounting partnership organized under the laws of Illinois, as an independent Certified Public Accountant to perform audits and prepare financial statements. At the time, Grant operated an office in Fort Lauderdale, Florida.
 
 
 3
 On March 4, 1985, the Securities and Exchange Commission filed a complaint for injunctive relief against E.S.M. alleging violations of the Securities Exchange Act of 1934. E.S.M. and its affiliates consented to the complaint and the district court entered a permanent injunction on March 6, 1985. After an involuntary Chapter 7 petition was filed on March 26, 1985, E.S.M. was adjudicated bankrupt.
 
 
 4
 Thereafter, approximately twenty actions were brought against Grant. The complaints, filed by a private individual, several financial institutions, and government entities, sought recovery for damages allegedly sustained by detrimental reliance on inaccurate financial statements prepared by Grant. The theories advanced by the plaintiffs included common-law fraud, ordinary, professional and gross negligence, and violations of (1) 10(b) of the Securities Act of 1934, 15 U.S.C. Sec. 78j(b) (1982); (2) Securities and Exchange Commission Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 (1986); (3) the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. Sec. 1961 et seq. (1982); (4) the Florida Securities Act, Fla.Stat.Ann. Sec. 517.301 (West Supp.1986); and (5) the Florida Racketeer Influenced and Corrupt Organization Act, Fla.Stat.Ann. Secs. 895.02 and 895.03 (West Supp.1986).
 
 
 5
 Recognizing that multiple actions brought against Grant were based on similar facts and involved common questions of law, the district court pursuant to Fed.R.Civ.P. 42(a) consolidated the actions for discovery proceedings before one district judge on July 30, 1985. At the request of the parties, the district court also entered an accompanying protective order[2] pursuant to Fed.R.Civ.P. 26(c) authorizing any party producing discovery material containing tax returns, trade secrets, or other sensitive material to designate any or all of it as "confidential."[3] Under the terms of the order, any material so designated was only available to the parties for use in litigation, and was inaccessible to any non-parties. A party challenging a "confidential" designation could seek judicial review by making an objection. Once a notice of an objection was received, the party seeking to protect the sensitive material had ten days to apply to the district court for a ruling on the merits.
 
 
 6
 The consolidation of the actions for discovery purposes and the issuance of the protective order resulted in the accumulation of approximately 40,000 documents in a discovery depository maintained by the parties. On January 13, 1986, the News and Sun-Sentinel Company, the publisher of the Fort Lauderdale News and Sun-Sentinel, and John Edwards, a journalist employed by the newspaper publisher (hereinafter appellants), filed a motion to intervene for the limited purpose of requesting reconsideration of the protective order. The motion to intervene was granted pursuant to Fed.R.Civ.P. 24(b) and a hearing was conducted on February 18, 1986. In an order dated March 3, 1986, the district court reconsidered and reaffirmed the protective order without modification. In re Alexander Grant & Co. Litigation, 629 F.Supp. 593 (S.D.Fla.1986). Appellants filed a notice of appeal on March 26, 1986.
 
 II. DISCUSSION
 
 7
 As a preliminary matter, we note that appellants have standing to intervene in this action and challenge the propriety of the district court's protective order. See In re Tribune Co., 784 F.2d 1518 (11th Cir.1986); Newman v. Graddick, 696 F.2d 796, 800 (11th Cir.1983). An order denying access to court proceedings and records is immediately reviewable. In re Tribune Co., 784 F.2d at 1521. Appellants argue that the district court abused its discretion by issuing and reaffirming the protective order limiting access to discovery material designated confidential. After reviewing the record and the applicable law, we disagree and affirm.
 
 A. Access to Discovered Information
 
 8
 First, appellants have no common-law right to examine the discovery materials at issue. There is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents. Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); United States v. Rosenthal, 763 F.2d 1291, 1293 (11th Cir.1985); Wilson v. American Motors Corp., 759 F.2d 1568, 1570 (11th Cir.1985). Nevertheless, this court has observed that private "documents collected during discovery are not 'judicial records' " United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir.1986). Thus, while appellants may enjoy the right of access to "pleadings, docket entries, orders, affidavits or depositions duly filed," Wilson, 759 F.2d at 1569 (emphasis added), appellants' common-law right of access does not extend to information collected through discovery which is not a matter of public record. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984); Anderson, 799 F.2d at 1441; United States v. Gurney, 558 F.2d 1202, 1209 (5th Cir.1977), cert. denied sub nom., Miami Herald Publishing Co. v. Krentzman, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978).[4]
 
 
 9
 Second, appellants possess no First Amendment rights to the protected information which override the provisions of Fed.R.Civ.P. 26(c). The discovery process, as a "matter of legislative grace," is a statutorily created forum not traditionally open to the public. Seattle Times Co., 467 U.S. at 32, 104 S.Ct. at 2207. Although information exchanged in pretrial discovery would often generate considerable public interest if publicly disseminated, private litigants have protectable privacy interests in confidential information disclosed through discovery. See Seattle Times Co., 467 U.S. at 35, 104 S.Ct. at 2208.
 
 
 10
 In order to preserve the confidentiality of sensitive materials, a district court may regulate access to the information by issuing a protective order pursuant to Rule 26(c).[5] See Seattle Times Co., 467 U.S. at 36, 104 S.Ct. at 2209; In re Consumers Power Co. Securities Litigation, 109 F.R.D. 45, 54-55 (E.D.Mich.1985); In re Korean Air Lines Disaster of September 1, 1983, 597 F.Supp. 621, 622 (D.D.C.1984). Such an order, if issued upon good cause and limited to pretrial civil discovery, is not subjected to heightened scrutiny. Seattle Times Co., 467 U.S. at 37, 104 S.Ct. at 2209; see Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1119 (3d Cir.1986); Tavoulareas v. Washington Post Co., 737 F.2d 1170, 1172 (D.C.Cir.1984); Korean Air Lines Disaster, 597 F.Supp. at 623. After evaluating and balancing the competing public and private interests, the Supreme Court has concluded that valid protective orders are not violative of the First Amendment because Rule 26(c) minimizes abuse of the discovery process--a substantial government interest unrelated to the suppression of expression. Seattle Times Co., 467 U.S. at 34, 104 S.Ct. at 2208; see Cipollone, 785 F.2d at 1119; Tavoulareas, 737 F.2d at 1172.
 
 B. Good Cause
 
 11
 A district court must articulate its reasons for granting a protective order sufficient for appellate review. See United States v. Kooistra, 796 F.2d 1390, 1391 (11th Cir.1986). Here, "the fear of adverse publicity, intimidation or other outside forces that could interfere with the free flow of information, most of which would not be admissible during the actual litigation stage of [the] cases" served as the articulated justifications for the order. As indicated, the sole criterion for determining the validity of a protective order is the statutory requirement of "good cause." Seattle Times Co., 467 U.S. at 37, 104 S.Ct. at 2209; Cipollone, 785 F.2d at 1119; Tavoulareas, 737 F.2d at 1172; see Fed.R.Civ.P. 26(c). "Good cause" is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action. In a different context, this court has identified four factors for ascertaining the existence of good cause which include: " the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order." Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1205 (11th Cir.1985). In addition, this circuit has superimposed a "balancing of interests" approach to Rule 26(c). See Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir.1985).
 
 
 12
 The protective order in question was issued with the consent and upon the request of the parties. The order was intended to expedite the flow of discovery material, promote the prompt resolution of disputes over confidentiality, and facilitate the preservation of material deemed worthy of protection. The terms of the order were precisely drawn. The parties enjoyed liberal access to all of the discovery materials and were prohibited from disseminating to non-litigants only those items designated by another party as confidential. The order had no effect on the dissemination of information gathered by a party through sources other than the discovery process. Although the duration of the disclosure restriction extended throughout the pretrial discovery process, no less onerous alternative existed.
 
 
 13
 Because parties often resist the exchange of confidential information, "parties regularly agree, and courts often order, that discovery information will remain private." Anderson, 799 F.2d at 1441. The Manual for Complex Litigation, Second, prepared by the Federal Judicial Center, suggests that in complicated cases where document-by-document review of discovery materials would be unfeasible, an "umbrella" protective order, similar to the one issued in this case, should be used to protect documents designated in good faith by the producing party as confidential. Manual for Complex Litigation, Second, Sec. 21.431 (1985). Under the provisions of umbrella orders, the burden of proof justifying the need for the protective order remains on the movant; only the burden of raising the issue of confidentiality with respect to individual documents shifts to the other party. Cipollone, 785 F.2d at 1122. See Manual for Complex Litigation, Second, Sec. 41.36. Protective measures requested by the parties incorporating umbrella orders have been approved by other courts pursuant to Rule 26(c). See e.g. Cipollone, 785 F.2d at 1123; In re Reporters Committee for Freedom of the Press, 773 F.2d 1325, 1326 (D.C.Cir.1985); Korean Air Lines Disaster, 597 F.Supp. at 622; Zenith Radio Corp. v. Matsushita Electric Industrial Co., 529 F.Supp. 866, 873 (E.D.Pa.1981); Chambers Development Co. v. Browning-Ferris, 104 F.R.D. 133, 135 (W.D.Pa.1985); In re "Agent Orange" Product Liability Litigation, 96 F.R.D. 582, 583 (E.D.N.Y.1983).
 
 
 14
 The realities of today's world have shown that discovery and the exchange of information can become extremely difficult. Busy courts are simply unable to hold hearings every time someone wants to obtain judicial review concerning the nature of a particular document. The order issued in this case, as in others, is designed to encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of improper disclosure. After this sifting, material can be "filed" for whatever purpose consistent with the issues being litigated whether by pretrial hearing or an actual trial. Judicial review will then be limited to those materials relevant to the legal issues raised. History has confirmed the tremendous saving of time effected by such an approach. The objective is to speed up discovery. Efficiency should never be allowed to deny public access to court files or material of record unless there has been an appropriate predicate established. The procedures utilized here allow the litigation to proceed expeditiously without compromising the rights of anyone. After considering the factors previously mentioned for ascertaining good cause and balancing the interests of the parties and the non-parties concerning the dissemination of discovery materials, we affirm the protective order in this case. A district court has broad discretion when fashioning protective orders. Farnsworth, 758 F.2d at 1548. We conclude that in complex litigation where document-by-document review of discovery materials would be unpracticable, and when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c). Accordingly, we find no abuse of discretion and affirm the order of the district court.
 
 
 15
 AFFIRMED.
 
 CLARK, Circuit Judge, dissenting:
 
 16
 In this prior restraint upon access to public information case, the majority opinion fails to recognize the distinction between the issue in this case and that in Seattle Times, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), upon which it relies. Seattle Times was a private law suit by plaintiffs seeking damages from the newspaper for defamation. The newspaper wished to publicize information obtained by discovery in the law suit. The plaintiffs sought protection from publication of the names of the plaintiff religious organization, members of which had received threatening letters. In affirming that there was no abuse of discretion in the entry of the protective order by the Washington state trial court and the affirmance of the order by the Washington Supreme Court, the Supreme Court of the United States stated the following in its note 24:
 
 
 17
 It is apparent that substantial government interests were implicated. Respondents, in requesting the protective order, relied upon the rights of privacy and religious association. Both the trial court and the Supreme Court of Washington also emphasized that the right of persons to resort to the courts for redress of grievances would have been "chilled." See n. 22, supra.
 
 
 18
 In the Seattle Times case, there was no governmental entity or public official who was a party to the litigation. The law suit involved no issue of scrutinizing the actions of public officials in investing public funds. By contrast, the present case had amongst the plaintiffs ten local governing bodies from Pompano Beach, Florida to Clallam County, Washington, who along with others sought to recover damages resulting from the collapse of E.S.M. Government Securities, Inc. in which investors, including the municipal and local governments, lost millions of dollars. It is obvious that this law suit is not merely private litigation. The public has an interest in the facts of this case. This does not mean that the public or the press should have carte blanche access to discovery information obtained in the pretrial proceedings of this case. However, it does mean that the public interest and right of access to information should be considered in the balancing process of determining whether the pretrial information should be limited to the parties only. Here there was not even any inquiry as to whether there should be a balancing process.
 
 
 19
 While the right of access of the public and the press to public information had been considered by many as a component of the First Amendment, it was first announced by the Supreme Court in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Justice Stevens in his concurring opinion stated:
 
 
 20
 This is a watershed case. Until today, the court has accorded virtually absolute protection to the dissemination of information or ideas, but never before has it squarely held that the acquisition of newsworthy matter is entitled to any constitutional protection whatsoever.
 
 
 21
 Id. at 582, 100 S.Ct. at 2830.
 
 
 22
 Prior to Richmond Newspapers, Inc., its author, Chief Justice Burger, had written the following as part of the plurality opinion in Houchins v. KQED, Inc., 438 U.S. 1, 15, 98 S.Ct. 2588, 2597, 57 L.Ed.2d 553 (1978): "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." Two justices took no part in the consideration or decision of the case. Justice Stewart concurring in the judgment wrote the following:
 
 
 23
 The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally. The Constitution does no more than assure the public and the press equal access once government has opened its doors. Accordingly, I agree substantially with what the opinion of The Chief Justice has to say on that score.
 
 
 24
 We part company, however, in applying these abstractions to the facts of this case. Whereas he appears to view "equal access" as meaning access that is identical in all respects, I believe that the concept of equal access must be accorded more flexibility in order to accommodate the practical distinctions between the press and the general public.
 
 
 25
 When on assignment, a journalist does not tour a jail simply for his own edification. He is there to gather information to be passed on to others, and his mission is protected by the Constitution for very specific reasons. "Enlightened choice by an informed citizenry is the basic ideal upon which an open society is premised ..." Branzburg v. Hayes, 408 U.S. 665, 726, 92 S.Ct. 2646, 2672, 33 L.Ed.2d 626 (dissenting opinion). Our society depends heavily on the press for that enlightenment. Though not without its lapses, the press "has been a mighty catalyst in awakening public interest in governmental affairs, exposing corruption among public officers and employees and generally informing the citizenry of public events and occurrences...."
 
 
 26
 Id., 438 U.S. at 16-17, 98 S.Ct. at 2597-98 (footnote omitted) (citations omitted).
 
 
 27
 For a district court to enter a protective order making information inaccessible pursuant to Fed.R.Civ.P. 26(c), the party must show good cause and the court must evaluate and balance "the competing public and private interests." Majority op. at 355. The majority is absolutely correct in making this legal statement and I concur without any hesitancy. The majority then approves the following finding of probable cause by the district court: " 'the fear of adverse publicity, intimidation or other outside forces that could interfere with the free flow of information, most of which would not be admissible during the actual litigation stage of [the] cases.' " Id. at 355-56. However, there are no facts in the record in this case that form the basis of a finding of any fear of adverse publicity or intimidation nor was there any consideration by the district court of the public right of access. To the contrary, in this case, the parties, including the public entities, stipulated to the consent order.[1]
 
 
 28
 In Seattle Times, the plaintiffs presented evidence establishing threats of harm to themselves and an abuse of their First Amendment right of religious association if the discovery sought were revealed to the public. Here the parties offered no facts in support of a probable cause finding. The majority approves a consent order denying the public access to information[2] without the evaluation and balancing of public and private interest which the opinion says is required. Thus, I cannot join it.
 
 
 
 [1]
 In a term repurchase transaction, a customer has short-term cash surplus and wishes to invest it in a no-risk liquid investment. The customer enters into an agreement to purchase securities and sell them back after expiration of a specified term at a higher price. In a reverse repurchase transaction, the customer owns securities and has a short-term cash need. The customer agrees to sell the securities and repurchase them after the expiration of a specified term at a higher price
 
 
 [2]
 The full text of the protective order appears in In re Alexander Grant & Co. Litigation, 629 F.Supp. 593, 595-97 (S.D.Fla.1986)
 
 
 [3]
 Fed.R.Civ.P. 26(c) provides in pertinent part: "for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (2) that the discovery may be had only on specified terms and conditions ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way...."
 
 
 [4]
 The Eleventh Circuit, in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [5]
 See supra note 3
 
 
 [1]
 The protective order in question was issued with the consent and upon the request of the parties. The order was intended to expedite the flow of discovery material, promote the prompt resolution of disputes over confidentiality, and facilitate the preservation of material deemed worthy of protection
 ....
 After considering the factors previously mentioned for ascertaining good cause and balancing the interests of the parties and the non-parties concerning the dissemination of discovery materials, we affirm the protective order in this case.... We conclude that in complex litigation where document-by-document review of discovery materials would be unpracticable, and when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c).
 Majority op. at 356-57.
 
 
 [2]
 I do not suggest that the public has an automatic right to the pretrial discovery in this case. It does have a right to know why it should not have access when the conduct of public officials may be under scrutiny. Similarly, I do not suggest wrongdoing on the part of any public officials. The record is a blank. See Van Alstyne, Interpretations of the First Amendment, 50-67, (Duke Press Policy Studies, 1984), for an excellent discussion of the competing considerations in granting or denying access