## CIRCUIT COURT OF LOUDOUN COUNTY

Fuad S. Abujaber

    v.

Samir F. Kawar et al.

### Case No. (Chancery) 11514

By JUDGE JAMES H. CHAMBLIN

January 2, 1990

This letter opinion addresses the following:

1. The Motion to Declare the Deposition of Sabih al Masri Invalid and Inadmissible in Evidence at Trial filed by Fuad S. Abujaber ("Abujaber").

2. The Motion to Accept Depositions (of Faris Muasher and Sabih al Masir) for Use at Trial filed by Samir F. Kawar ("Kawar").

I have considered the aforesaid Motions and all attachments thereto (except Exhibit No. 21 to Kawar's Motion), the evidence presented, and the argument of counsel on December 7, 1989, and the memorandum of Kawar. In addition, I have reviewed and considered the first hour and seven

minutes of the videotape of the deposition of Mr. Muasher on October 2, 1989.

For the reasons hereinafter set forth, the Motion of Abujaber is granted, and the Motion of Kawar is denied.

The two subject depositions were taken in the Hotel Jordan Intercontinental in Amman, Jordan. The deposition of Mr. Muasher was taken on October 2, 1989, and the deposition of Mr. al Masri was taken on October 3, 1989. Counsel for Abujaber for various reasons objected to the Muasher deposition of October 2, 1989, and left when counsel for Kawar did not agree to suspend the taking of the deposition. Counsel for Abujaber attended the deposition of Mr. al Masri on October 3, 1989, but reserved all objections. Both depositions were taken before Mahmoud el Natour, a notary public under the law of Jordan.

After a review of the videotape, I find that Mr. el Natour understood little, if any, English. The subject depositions were conducted in English, although the deponents were sworn in both Arabic and English.

Abujaber has advanced several arguments why the Court should not accept the depositions, and Kawar has put forth several arguments why the depositions should be accepted. While all the issues presented are very interesting, I feel that only one issue need be considered. That issue is the inability of the Jordanian notary to understand English.

The Rules do not define "deposition." It is generally defined as "the testimony of a witness taken upon interrogatories, not in open court, but in pursuance of a commission to take testimony issued by a court, or under a general law on the subject, and reduced to writing and duly authenticated, and intended to be used upon the trial of an action in court." Black's Law Dictionary 527 (4th Ed. 1968); 6A Michie's Jurisprudence, *Discovery*, Section 9.

Although Part 4 is silent on the point, I feel that it must be implicit in any law or rule as to a deposition that the official before whom the deposition is taken must be able to understand the language used by the deponent. Rule 4:5(f)(1) requires the officer to certify that the deposition is a true record of the testimony. Mr. el Natour could not understand English to the point that he could certify the accuracy of the deponents' testimony. Therefore, the two subject depositions cannot be used

for any purpose in this cause. Because the foregoing is dispositive of the issues raised, the other points asserted by the parties need not be considered.

January 17, 1990

After argument on January 9, 1990, two matters were taken under advisement, and they are addressed herein.

I. *Abujaber's Motion to Exhibit Videotapes and Transcripts of Jordanian Depositions.*

For the reasons hereinafter set forth, I find that the videotapes and transcripts are "pretrial documents," and the previous protective orders concerning the videotapes and transcripts will not be modified at this time, but a hearing should be held to determine if "good cause" exists for continuance of the protective orders.

In order to decide the issue raised by this motion, it must first be determined whether the videotapes and transcripts of the Jordanian depositions are "judicial records" or "pretrial documents." Pursuant to an order entered November 6, 1989, the videotapes in Jordanian-compatible form were delivered to the Court and are being held by the Clerk "in secure custody open to viewing in the courthouse by counsel to any party herein or by any party in the company of one or more of his counsel, but not others except upon application to, and authorization by, this Court." The videotapes were so delivered after being converted to American-compatible form. No transcripts have ever been filed. The videotapes are still being kept by the Clerk.

The videotapes and transcripts are depositions under Part Four of the Rules of the Supreme Court of Virginia (the "Rules"). Under the Rules, I do not feel that there is any special significance to the fact that the depositions were noticed as *de bene esse* depositions. They were taken under, and their use is subject to, the appropriate provisions of Part Four of the Rules. They may or may not be used at trial. Right now they are part of pretrial discovery.

Abujaber cites *In Re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987), for the proposition that depositions *duly filed* become a part of the "judicial records" of a case. This case is also cited in a footnote in the leading Virginia case of *Shenandoah Publishing v. Fanning*, 235 Va. 253, 261 (1988). However, in this case I do not believe that the videotapes have been "duly filed." Except for depositions taken in divorce and annulment cases, depositions taken pursuant to Rule 4:5 (and Rule 4:7A per Rule 4:7A(f)) shall not be filed unless directed by the court. The order entered November 6, 1989, does not direct that the depositions be "filed." If something is "filed" with a court, then it is implicit that someone wants it to be a part of the court's record (the "judicial records" which are presumptively open to public inspection). The aforesaid order is a protective order wherein the Clerk was designated as the custodian of the videotapes. The Court could just have easily chosen some other custodian. Safekeeping and restricted access were the prime considerations of this Court's order, and not making the videotapes a part of the "judicial records." The videotapes were not "duly filed" because they were not filed as allowed under the Rules.

Abujaber cites *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988); *In re Continental Illinois Securities Litigation*, 732 F.2d 1302 (7th Cir. 1984); and *Anderson v. Cryiovac, Inc.*, 805 F.2d 1 (1st Cir. 1986) (documents or other matters utilized by a court in making a dispositive ruling become automatically thereby "judicial records" which are presumptively open to public inspection). He argues that because Kawar moved the Court to accept for use at trial two of the depositions, and the Court viewed part of one of them in ruling on the motion, those two depositions are now part of the "judicial records." I do not agree. Under the cases cited, I feel that the depositions would become "judicial records" if they formed all or part of the basis of a ruling disposing of an issue in the case. Here the motion merely raised a question of the use of the depositions.

Even if Kawar's motion concerning use of the two depositions caused the Court to make what is considered a dispositive ruling, I feel that only that portion of the videotape which I viewed would become a "judicial

record." I viewed the videotape of Mr. Muasher's deposition from the beginning until the first question was asked of him. I did not view any more of that videotape, and I did not view the videotape of Mr. al Masir's deposition. All other findings made by the Court relative to Kawar's motion (and Abujaber's counter-motion) were based on un-contradicted representations of counsel at oral argument or in memoranda. No part of the videotape I viewed contained any testimony by Mr. Muasher. I have never seen a transcript of any of the depositions.

For all the foregoing reasons, I am of the opinion that the videotapes in Jordanian-compatible form and the transcripts of the Jordanian depositions are "pretrial documents." Therefore, under Rule 4:1(c), the Court may enter a protective order "for good cause shown." Counsel for Abujaber conceded at oral argument on January 9, 1990, that no constitutional or common law right of access applies to "pretrial documents." Therefore, there is no need to consider any constitutional or common law argument.

The protective orders were entered based upon several considerations which I felt constituted good cause for entry of the orders. My independent research was of the political situation in Jordan, not of the business customs and practices. Mr. Abujaber and his counsel were present at each deposition. They know the content of the testimony of each deponent. They also have videotapes of each deposi-tion in American-compatible form. They are not ignorant of the testimony of each deponent. Weighing the equities of each party, I felt it more prudent to enter a protective order to prevent a future problem than to refuse to enter a protective order and have to deal with a potentially damaging disclosure problem at a later time. I wanted to "close the barn door *before* the horse got out."

Even considering the allegations and arguments set forth by Abujaber in his motion, I do not believe that the protective orders hinder Abujaber in his trial prepara-tion for the simple reason that Abujaber and his counsel are fully aware of each deponent's testimony.

The affidavits of Faris Muasher, Elias Awwad, and George Noursi which were tendered to the Court by Kawar at oral argument on January 9, 1990, have not been consi-dered for purposes of the rulings set forth herein.

However, in all fairness to all parties, at the request of any party, the Court will hold a hearing at which any party may present evidence relative to the protective orders or any modification thereof.

II. *Kawar's Motion Pursuant to Rule 4:1(b)(4)(A)(ii) to Compel Disclosure of Expert Information and Documents*

This motion which was filed on December 27, 1989, arises out of the "Laboratory Report" of Dr. David A. Crown concerning the account book of Mr. Kawar. While I agree with counsel for Mr. Kawar that the "Laboratory Report" is not a "complete report" as contemplated by the order entered November 6, 1989, further testing of the account book has been permitted by the Court, and Dr. Crown stated in open court on January 9, 1990, that his file was open for inspection by counsel for Kawar.

At the present time, Kawar has not advanced a sufficient reason for this Court in its discretion to order further discovery beyond what is permitted under Rule 4:1(b)(4)(A)(i).

Therefore, the motion is denied at this time.

February 1, 1990

This letter opinion addresses the following:

1. The Motion of Fuad S. Abujaber to redepose Isa S. Kaibni ("Kaibni"); and

2. The Motion of Abujaber to overrule Kaibni's objection to paragraph three of Abujaber's Request for Production of Documents of November 22, 1989.

*Motion to Redepose Kaibni*

Kaibni was initially deposed by Abujaber on August 31, 1989. At that time, Kaibni's plea that this Court lacked personal jurisdiction over him was still pending. The Court had allowed the parties to take discovery which could be considered by the Court in deciding that issue. The notice of Abujaber for the taking of Kaibni's deposition specifically states that the deposition will be taken "for purposes of discovery or for use as evidence, or

both, on the issue of personal jurisdiction over Isa S. Kaibni."

Kaibni is a party to this suit only with respect to the 116 acre parcel. Therefore, any inquiry as to personal jurisdiction over him had to concern only the 116 acre parcel. No one at oral argument on January 29, 1990, refuted Mr. Garnett's assertion that he focused on Mr. Kaibni's contacts with the 116 acre parcel during the deposition on August 31, 1989.

At the beginning of the deposition, counsel for Kaibni made some statements indicating an intent not to stop interrogation of Kaibni at the jurisdictional level. See page 5 of the deposition transcript. Despite the "invitation," Mr. Garnett chose not to go beyond the jurisdictional level. Considering that there had not yet been a ruling by this Court as to personal jurisdiction over Kaibni, it would have been unfair to Abujaber on August 31, 1989, to have required him to go beyond the jurisdictional level of interrogation. He would have been wasting his time and expense if the Court had subsequently ruled that it had no personal jurisdiction over Kaibni.

The Motion to Redepose Kaibni is granted. Abujaber will have only one more opportunity to depose Kaibni, and he should refrain from going over areas already covered in the August 31, 1989, deposition.

Further, I am of the opinion that the discovery obtainable from Kaibni is not limited solely to the transactions or parcel concerning which he is being sued. Rule 4:1(b)(1) clearly provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery *or to the claim or defense of any other party . . . .*" (Emphasis mine.) The emphasized language would allow Abujaber to seek discovery, if obtainable, under the Rules from Kaibni about Abujaber's claims against Kawar and Noursi and the defenses of the latter two. This would allow Abujaber to examine Kaibni concerning the other two parcels of real estate involved in this suit and his activities, contacts, and relationships with the other two defendants with respect thereto.

### Motion to Overrule Objection

Abujaber requested Kaibni to produce:

3. The bank statements and any other records of the account at D.C. National Bank (Sovran) under the defendant's control and for the benefit of Faris Muasher.

Kaibni has objected to the production of such documents for the following reasons:
1. Accountant-client privilege;
2. Relevancy;
3. Not calculated to lead to discovery of relevant evidence as to the claims asserted in the Second Amended Bill of Complaint against him; and
4. Vagueness and nonspecificity of the request.
Each ground of the objection is addressed below.

While Virginia does not recognize an accountant-client privilege, see Friend, *Law of Evidence in Virginia,* sect. 68, Maryland does have a statutory accountant-client privilege, see Annotated Code of Maryland, Courts and Judicial Proceedings, § 9-110. Kaibni is an accountant, and he practices with offices in Maryland. Muasher is, or was, a client of Kaibni. There is no indication that the requested documents are allegedly under Kaibni's control for any reason other than as accountant for Muasher.

The accountant-client privilege is for the primary benefit of the client who, in this case, is Mr. Muasher. He is not a party to this suit, and he has not waived the privilege.

While Mr. Muasher may have some degree of expectation of confidentiality resulting from the privilege as recognized in Maryland, Kaibni should not be allowed to throw up unilaterally in a Virginia lawsuit a shield of a privilege not recognized in this state. To balance both concerns, a protective order along the lines set forth below is indicated.

If the bank account was mentioned by Mr. Muasher in his deposition as relating to one of the parcels of real estate involved in this litigation, then the request is relevant or, at the very least, could reasonably lead to the discovery of admissible evidence. For reasons stated

above, the discovery does not have to relate solely to the claims against Kaibni in the pleadings.

Kaibni claims he is unable to determine which documents are held "for the benefit of Faris Muasher"; therefore, the request is vague and nonspecific. I do not agree with that conclusion. It is the account which is for the benefit of Muasher. It should be simple to determine if someone derives a benefit from a bank account.

In conclusion, Kaibni's objection is overruled, and he will respond to the request for production on or before February 16, 1990, with the provision that if documents are produced, then they will be delivered to the Clerk of this Court in a sealed envelope and will be opened thereafter under the direction of the Court in the presence of counsel. The court is not ruling that what is produced is admissible in evidence at trial. Also, any further examination, copying, or dissemination of the produced documents will be subject to a future order of this Court.

### July 17, 1990

This cause is before the Court on the joint Motion for Determination of Disputed Issues as to Documentation of Settlement Agreement ("Motion") filed herein by Fuad S. Abujaber and Samir F. Kawar. After oral argument by Mr. Radigan and Mr. Stump on July 13, 1990, the Court took under advisement (1) whether or not the Court should entertain the Motion, and if so, (2) a ruling on the Motion.

For the reasons hereinafter set forth, the Court does entertain the Motion, and its decision on the Motion is set forth below.

### I. *Entertainment of the Motion*

Canon 5(E) of the Canons of Judicial Conduct provide that a judge shall not act as an arbitrator or mediator. While perhaps at first impression, it might appear that Abujaber and Kawar want this Court to determine certain disputed matters between them (i.e., as in an arbitration), I feel, after consideration of all the circumstances, they are not seeking arbitration. Also, they are not asking the Court to intervene between them with a view toward

reconciling them and persuading them to settle their disputes (i.e., as in a mediation). I am not a stranger to their disputes. The present Motion arises out of the settlement of a lawsuit stated in open Court before me on May 11, 1990. Settlement agreements between parties to litigation are designed to put an end to litigation and are favored by the law. *Stamie E. Lyttle Co. v. County of Hanover*, 231 Va. 21 (1986). A trial court has the authority to determine whether or not an oral agreement stated on the record before the trial judge does constitute a valid contract settling litigation before the court. *Richardson v. Richardson*, 10 Va. App. 391 (1990). The agreement as stated by Mr. Radigan in open Court on May 11, 1990, could not, due to its inherent complexity, have set forth every detail (especially the content of every document). This Court should do everything within its power to see that this litigation is settled. I am of the opinion that the Motion can be, and accordingly, it is entertained by the Court. Finally, I cannot ignore that both Abujaber and Kawar want the Court to resolve their differences as set forth in the Motion and have agreed to be bound by the Court's decision.

## II. *Decisions on the Motion*

Before addressing each area of difference in the Motion, I must make some general comments. There is no dispute as to the facts because a transcript of the proceedings when the agreement was stated for the record on May 11, 1990, is attached to the Motion as Exhibit 1, and neither party disputes its accuracy. As the words used by counsel form the agreement, it must be construed according to the words used.

A. *One Note-One Deed of Trust, or Two Notes-Two Deeds of Trust*

Kawar agreed to purchase Abujaber's stock interest in the two California properties (571 acres and 71 acres) for $4,400,000.00 with $800,000.00 to be paid in cash and balance payable over six years and "secured by *a* deed of trust *on the two properties*." (Emphasis mine.) No mention

was made of more than one note or two separate deeds of trust.

I construe the agreement to provide for one note secured by one deed of trust on both properties.

### B. *Due on Sale Provisions (Sale of the Properties)*

When Abujaber agreed to the terms of the sale of his stock interests in both properties, he agreed that he could be paid a portion thereof over a six-year period. He anticipated receiving the sales price from Kawar over a period of time. If Abujaber had wanted to be paid when the properties are sold, then I feel that Abujaber should have made it a specific provision of the agreement.

Such a provision would be adding a term to the settlement agreement beyond the agreement of the parties. While it may be customary to have such a provision in an ordinary commercial transaction, I do not feel that this settlement can be considered as an ordinary or routine commercial transaction. The purpose of the agreement is to settle the litigation.

For the foregoing reasons, the note will not contain such a due on sale provision.

### C. *Acceleration Upon Change of Ownership of the Stock of the Corporation(s) Granting the Security Interest in the Land*

For the same reasons as set forth in B. above, the note will not contain a provision for acceleration upon a change of stock ownership of any corporation.

### D. *Provisions for Public Dedications by the Trustee*

This is a provision beyond the agreement of the parties. See my comments above about custom. Abujaber agreed that the two properties (which to me means all the acreage of both properties) would be his security.

The deed of trust will not contain such a provision.

E. *Place of Payment of Note*

I feel that this provision is in addition to that agreed upon by the parties. The note should be payable to Abujaber, and he should direct where the payments are to be made.

F. *Partial Releases*

For reasons similar to those stated above, I feel that this is an additional provision beyond the parties' agreement. The deed of trust will contain no provision as to partial releases.

G. *Substitute Security*

While Abujaber may not be harmed by a provision allowing a guaranty of payment or letter of credit as substitute security, he did not agree to it on May 11, 1990. This is something beyond the agreement of the parties and will not be a provision of the settlement agreement.

H. *Date from Which Interest Shall Accrue*

Because under the agreement Abujaber is to receive payments in June and December starting December, 1990, I feel it would be simpler and equitable for interest to start on June 1, 1990. Interest can then accrue on six-month increments.