[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11511
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00212-SCJ-LTW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL RUDOLPH MCGOWAN,
a.k.a. Paul Rudolph McGowen,
a.k.a. Gary Horatio Matthew,
a.k.a. Gary Hatio Matthew,
a.k.a. Stephen Walters,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 17, 2014)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Paul Rudolph McGowan is a citizen of Jamaica. In 2010, an Immigration Judge ordered him removed from the United States to Jamaica, and on December 22, 2011, he boarded a plane for Jamaica, having obtained from Jamaica a temporary passport. McGowan's stay in Jamaica was brief. On June 19, 2012, agents of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") got word that McGowan was back in the United States, obtained a warrant for his arrest, and arrested him shortly thereafter on June 29.[1] On July 2, 2012, a Northern District of Georgia grand jury indicted McGowan for illegally re-entering the United States as a previously removed alien, in violation of 8 U.S.C. §§ 1326(a), (b)(2) (2010). He pled not guilty to the charge and, on January 22, 2013, stood trial before a jury.

Two weeks before McGowan's trial, the Government gave him copies of several foreign documents, including an Application for Taxpayer Registration ("Application") McGowan purportedly executed in Jamaica on March 20, 2012. An individual submitted the Application to the Jamaican government under the

---

[1] The agents obtained a warrant for McGowan's arrest on information that he was wanted by the Rockdale County, Georgia, Sheriff's Office for possession of a firearm by a convicted felon. The agents attempted to arrest McGowan on June 22, but he fled on foot. A week later, the agents were informed that he was residing in a home in Decatur, Georgia. They approached the home, but McGowan saw them coming and ran into an adjoining wooded area. The agents subdued McGowan and took him into custody after employing a Taser device.

name Paul McGowan along with a photocopy of a Florida identification card in that name, and listed his place of birth as Jamaica.  Three days before trial, the Government provided McGowan with a letter of certification from the Superintendent of the Jamaican Police, which stated that the Application was a copy of the original document, which was initially submitted to the Jamaican Taxpayer Registration Centre Head Office but was transferred to the Jamaican police in connection with a fraud investigation.

At the end of the first day of trial, McGowan moved in limine to exclude the Application, which the Government planned to introduce into evidence the following day, objecting to the late disclosure of the document and disputing its authenticity.  The District Court admitted the Application as presumptively authentic without final certification under Federal Rule of Evidence 902(3)(A). The jury convicted McGowan, and the District Court sentenced him to 90 months' imprisonment, noting, in part, his extensive criminal history and lack of remorse.

McGowan appeals both his conviction and sentence.  He seeks the vacation of his conviction and a new trial on three grounds: (1) the Government's disclosure of the Application two weeks before trial amounted to discovery violation of Federal Rule of Criminal Procedure 16 because the court should have continued the trial or prohibited the Government from introducing the Application; (2) the court erred in finding the Application authentic; and (3) the admission of the

3

Application violated his rights under the Confrontation Clause of the Sixth Amendment. McGowan also seeks the vacation of his sentence and a new sentencing proceeding on the ground that his sentence is unreasonable because it is excessive and resulted from the impermissible "double counting" of one of his prior convictions. We address these grounds in turn.

## I.

We review discovery rulings for abuse of discretion. United States v. Campa, 529 F.3d 980, 992 (11th Cir. 2008). Rule 16 requires that the government permit a defendant, upon request, to inspect all documents the government intends to use in its case in chief. Fed. R. Crim. P. 16(a)(1)(E). Further, the government has a continuing duty to disclose newly discovered evidence. See Fed. R. Crim. P. 16(c). If the court determines that a party violated Rule 16's disclosure requirements with respect to a certain item of evidence, the court may (1) order the violating party to permit discovery or inspection; (2) grant a continuance, (3) prohibit the violating party from introducing the evidence, or (4) "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

While the government may not leave evidence in the hands of a third party to avoid disclosure, if the evidence is not in the government's possession, custody, or control, then it is not subject to discovery. United States v. Brazel, 102 F.3d 1120, 1150 (11th Cir. 1997) ("Nothing in this record, however, suggests that the

4

prosecution deliberately left the [documents] with [the office that held them] to avoid its discovery obligations.").

We conclude that the Government's disclosure of the Application did not violate any of the discovery requirements of Rule 16.  Although the Government gave McGowan the Application only two weeks prior to trial, the record shows that it did so immediately upon receiving the document, after exercising diligence in trying to obtain it.  The prosecutor swore as an officer of the court that she requested the Application from the Jamaican authorities when she was first assigned the case in September 2012, requested it again prior to January, and immediately forwarded it to McGowan once she received it.  McGowan presented no evidence to the contrary.

Because the Government's discovery obligation began only once it received the Application, its disclosure immediately thereafter satisfied Rule 16's discovery requirements.  We thus find no abuse of discretion in the court's denial of McGowan's motion in limine.

## II.

We review a district court's decision that a particular piece of evidence has been properly authenticated for an abuse of discretion.  Thus, we will not disturb the admission of the evidence "on appeal absent a showing that there is no competent evidence in the record to support it."  United States v. Caldwell, 776

5

F.2d 989, 1001 (11th Cir. 1985) (internal quotation marks omitted) (discussing authentication through extrinsic evidence under Federal Rule of Evidence 901); see also United States v. Koziy, 728 F.2d 1314, 1322 (11th Cir. 1984) (discussing self-authentication under Federal Rule of Evidence 902(3)).

Authenticity is a prerequisite of admissibility. See Fed. R. Evid. 901. A party may authenticate, or lay the foundation for, a document through extrinsic evidence, as contemplated under Federal Rule of Evidence 901, or a document may be self-authenticating under Rule 902. See Fed. R. Evid. 901–02. When a document is "self-authenticating" under Rule 902, no extrinsic evidence of authenticity is necessary. Fed. R. Evid. 902.

A foreign public document is "a document that purports to be signed or [as in the present case] attested by a person who is authorized by a foreign country's law to do so." Fed. R. Evid. 902(3). There are three ways in which a foreign public document may be authenticated without additional extrinsic evidence under Rule 902.

First, a document may be formally "self-authenticating" under the primary paragraph of Rule 902(3), which requires a party to provide a final certification indicating that "the official vouching for the document [the signor or attestor] is who he purports to be." United States v. Deverso, 518 F.3d 1250, 1256 (11th Cir. 2008) (internal quotation marks omitted). Second, where a foreign public

document lacks the proper final certification required under Rule 902(3)'s primary paragraph, subsection (A) of Rule 902(3) provides that the document may be "treated as presumptively authentic" if two conditions are satisfied: (1) the parties have been a "given a reasonable opportunity . . . to investigate the document's authenticity and accuracy"; and (2) "good cause" exists to excuse the missing final certification.  Fed. R. Evid. 902(3)(A).  Finally, subsection (B) allows a foreign public document "to be evidenced by an attested summary with or without final certification" upon the same showing of good cause and reasonable opportunity for inspection in subsection (A). Fed. R. Evid. 902(3)(B).  "Good cause is a well established legal phrase[;] [a]lthough difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action."  In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987) (internal quotation marks omitted) (discussing good cause in the context of a issuing a protective order).

A challenge to the reliability of information contained in a document authenticated under Fed. R. Evid. 902(3) "goes to the weight of the evidence, not its admissibility on grounds of authenticity."  Deverso, 518 F.3d at 1256; see also Caldwell, 776 F.2d at 1002 (explaining that authentication merely involves presenting sufficient evidence of a prima facie case of authenticity, and "the trier of fact [ultimately decides] whether the proffered evidence is in fact what it

purports to be").

To obtain a conviction for illegal attempted reentry under 8 U.S.C. § 1326(a), the government must prove that the defendant: (1) was an alien at the time of the attempted reentry; (2) had previously been deported; (3) had not received the express consent of the Attorney General to apply for re-admission to the United States since his previous deportation; and (4) attempted to enter the United States. United States v. Marte, 356 F.3d 1336, 1345 (11th Cir. 2004).

We find no abuse of discretion in the District Court's treatment of the Application as presumptively authentic without final certification under Fed. R. Evid. 902(3)(A). First, McGowan had a reasonable opportunity to inspect the document. He received the document two weeks in advance of trial and never contacted the Government with any questions or doubts as to its authenticity during that time. He asserts that two weeks was insufficient for him to reasonably inspect the two-page Application, but he neither explains why he was unable to do so nor presents any evidence demonstrating the same.

Second, "good cause" excused the final certification requirement under Fed. R. Evid. 902(3). The uncontroverted evidence showed that the inadequate certification letter was due to the Jamaican government's delayed cooperation. That government provided the certification only three days prior to trial, despite the prosecution's diligence in requesting the document months earlier, and thus

8

leaving the prosecution no time to obtain an additional certification before trial. Furthermore, the attaché officer ICE's Jamaica office, who personally obtained copies of the Application from the Jamaican police department, the custodian of the original document, testified to the document's authenticity. That testimony and the certification letter, even if insufficient to satisfy the final certification requirement under Rule 902(3), were nonetheless evidence of the Application's authenticity.   McGowan failed to present any evidence undermining such authenticity.  In sum, the record contains a "sound basis" underlying the court's ruling.  See In re Alexander Grant, 820 F.2d at 356.

To the extent that McGowan attacks the ICE officer's testimony on the ground that the officer never spoke with anyone at the Jamaican Taxpayer Registration Office and did not know whether McGowan was actually the person who filled out the Application, his argument challenges the reliability of the information contained in the Application, and thus, goes to the weight of the evidence, not its authenticity.  See, e.g., United States v. Doyle, 130 F.3d 523, 545 (2d Cir. 1997).

Finally, assuming that the court abused its discretion in admitting the Application, the error was harmless.  The Government presented substantial evidence, beyond the Application, demonstrating McGowan's alienage. Specifically, the Government introduced (1) the Immigration Judge's 2010

decision ordering McGowan's removal to Jamaica, (2) the temporary passport the Jamaican government provided for McGowan's transportation to Jamaica, which stated that McGowan had admitted to being a citizen of Jamaica, and (3) ICE's certificate of nonexistence, which stated that McGowan was not a legal resident or naturalized citizen of the United States.

## III.

We review de novo a defendant's claim that his Sixth Amendment right of confrontation was denied. United States v. Gari, 572 F.3d 1352, 1361–62 (11th Cir. 2009). If we determine that a denial occurred, we will not reverse if the error was harmless. Id. at 1362. An alleged constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. (internal quotation marks omitted). In making this determination, we consider "the importance of the uncross-examined statements in the prosecution's case, whether those statements were cumulative, the presence or absence of evidence corroborating or contradicting the testimonial statement on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." Id. at 1363.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause prohibits the

10

introduction of out-of-court statements that are "testimonial," unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004).

Testimonial statements are ones a declarant "would reasonably expect to be used prosecutorially." United States v. Charles, 722 F.3d 1319, 1322 (11th Cir. 2013) (internal quotation marks and alterations omitted). In assessing whether a statement is testimonial in nature, we look "only at the *primary* purpose" of the questions that elicited the statement. United States v. Caraballo, 595 F.3d 1214, 1229 (11th Cir. 2010) (emphasis in original). In Caraballo, we rejected as testimonial a standard Immigration and Naturalization Service ("INS") alien-entry form, emphasizing that the form was merely a "record of biographical data," which the INS routinely generated and primarily used for the purpose of tracking the entry of aliens into the United States. Id. at 1228–29 (internal quotation marks omitted). We further explained, "[i]t is of little moment that an incidental or secondary use of the interviews [from which the forms were generated] underlying the [] forms actually furthered a prosecution." Id. at 1229.

Admission of non-testimonial hearsay against a criminal defendant is not governed by Crawford, but still violates the Confrontation Clause unless the statement falls into one of the hearsay exceptions, or otherwise carries a

11

particularized guarantee of trustworthiness.  United States v. Baker, 432 F.3d 1189, 1204 (11th Cir. 2005).  Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  United States v. Jiminez, 564 F.3d 1280, 1287 (11th Cir. 2009) (quoting Fed. R. Evid. 801(c) (internal quotation marks omitted)).  The Rules of Evidence provide that a statement made by a party against whom it is offered is not hearsay.  Fed. R. Evid. 801(d)(2)(A).  Thus, a defendant's own out-of-court statement is not hearsay and its admission does not violate the Confrontation Clause.  United States v. Brown, 441 F.3d 1330, 1358–59 (11th Cir. 2006).  Similarly a statement "made by a person whom the party authorized to make [] on the subject" is nonhearsay when offered against the party.  Fed. R. Evid. 801(d)(2)(C).

In reviewing the admissibility of a hearsay statement, we are not limited to the ground on which the document was admitted; we may affirm the admission under any applicable hearsay exception or nonhearsay provision.  See United States v. Williams, 837 F.2d 1009, 1013 (11th Cir. 1988) (concluding that a document was an admission by a party opponent, and thus nonhearsay under Rule 801(d)(2), and declining to address parties' arguments as to whether the document was a business record under Rule 803(6), the ground on which the district court relied, noting that either rule was applicable given that the proper foundation had

been laid); Campa, 529 F.3d at 998 ("We may affirm the decision of the district court on any ground that finds support in the record.") (discussing challenge to peremptory strikes).

Here, in light of the court's valid finding regarding authenticity, admission of the Application did not violate McGowan's rights under the Confrontation Clause. First, the "statements" in the Application were non-testimonial. The Government's witness testified that the purpose of submitting a Taxpayer Registration Application in Jamaica is to obtain a taxpayer number, the equivalent of a Social Security number in the United States. Thus, an applicant would not reasonably expect the form to be used prosecutorially. Charles, 722 F.3d at 1322. Indeed, the Application is analogous to the contested INS form in Caraballo. It requests "basic biographical information," and is processed by the Taxpayer Registration Office for all individuals who apply for a Taxpayer Registration Number, just as the INS generates its entry form on all aliens who enter the United States. See Caraballo, 595 F.3d at 1228–29.

Although McGowan argues that he could have expected the Application to be used against him, the argument is unavailing because his subjective expectation is not relevant. Moreover, in light of the Application's primary administrative purpose, its subsequent use at McGowan's trial is "of little moment" and does not render the Application testimonial. See id. at 1229.

13

Second, the statements in the Application are nonhearsay. Assuming, based on the instructions and format of the Application, that McGowan personally filled it out, and was thus the declarant, the statements are nonhearsay as an admission by a party opponent under Fed. R. Evid. 801(d)(2)(A). Even if the processing officer filled out the Application from information provided and sworn to by McGowan, McGowan authorized the officer to "make a statement on the subject," likewise rendering the statement nonhearsay under Fed. R. Evid. 801(d)(2)(C).

Finally, assuming that the court's admission of the Application violated McGowan's rights under the Confrontation Clause, the error was harmless. As previously noted, the Government presented strong evidence of McGowan's alienage, including an admission by McGowan that he was a Jamaican citizen, as reported by the Jamaican government in McGowan's temporary passport. In light of that statement, the Application section that identified McGowan's place of birth as Jamaica was simply cumulative evidence of his alienage. And, the Immigration Judge's removal order and the temporary passport corroborated the information in the Application demonstrating McGowan's alienage.

In short, even if the District Court erred in admitting the Application, the error was harmless beyond a reasonable doubt.

IV.

14

McGowan argues that his sentence should be vacated and that the case should be remanded for resentencing because the sentence is both substantively unreasonable and the product of improper "double counting."  We review McGowan's reasonableness argument for abuse of discretion, United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008), and the double counting argument de novo.  United States v. Naves, 252 F.3d 1166, 1168 (11th Cir. 2001).  We consider these arguments in reverse order.

A.

In United States v. Adeleke, 968 F.2d 1159 (11th Cir. 1992), we held that, in the context of the illegal reentry of a previously removed alien, where, as here, a prior drug conviction increases the defendant's base offense level pursuant to U.S.S.G. § 2L1.2 (Unlawfully Entering or Remaining in the United States), and also counts toward his criminal history, as in the case here, the resulting sentence is not the product of impermissible double counting.  Id. at 1160–61.  Rather, the calculation is permissible because the purpose of the criminal history category is "to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from re-entering the United States."  Id. at 1161.  Adeleke plainly forecloses McGowan's double counting argument.

B.

15

A sentence is substantively unreasonable if it does not achieve the purposes of sentencing stated in 18 U.S.C. § 3553(a), including the need for just punishment and deterrence. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court, absent a clear error in judgment. United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). The applicable Guidelines sentence range for McGowan's case calls for 77–96 months' imprisonment. We ordinarily expect, but do not automatically presume, that a sentence within the Guidelines range is reasonable. Id.

We need not tarry long in concluding that McGowan's sentence is substantively reasonable. Considering McGowan's propensity for reentry, his steady criminal history and lack of remorse for his criminal conduct, the District Court's imposition of a sentence within the Guideline's sentence range was clearly appropriate to promote respect for the law, provide just punishment, and deter McGowan from further criminal activity. See 18 U.S.C. § 3553(a)(2).

V.

For the reasons we have stated, McGowan's conviction and sentence are AFFIRMED.

16