**Marcus WIGGINS, Plaintiff,**

v.

**Jon BURGE, et al., Defendants.**

**No. 93 C 199.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 9, 1997.

Jeffrey H. Haas, John Ladell Stainthorp, G. Flint Taylor, Jr., People's Law Offices, Chicago, IL, for Marcus Wiggins.

Dale D. Pierson, Thomas J. Pleines, Brian C. Hlavin, Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, for Lodge No. 7 Fraternal Order of Police.

David K. Greene, PNC Mortgage Corp. of America, Vernon Hills, IL, William Joseph Kunkle, Jr., Cahill, Christian & Kunkle, Chicago, IL, for Jon Burge and John Byrne.

Kelly Raymond Welsh, Gregory J. Wojkowski, Patrick J. Rocks, Jr., Justin Paul Erbacci, Margaret Ann Carey, Patricia Jo Kendall, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for Leroy Martin and City of Chicago.

John F. McGuire, Thaddeus S. Machnik, City of Chicago, Law Dept. Corp. Counsel, Joseph M. Polick, City of Chicago, Department of Law, Chicago, IL, for James O'Brien.

Dale D. Pierson, Thomas J. Pleines, Alan H. Auerbach, Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, John F. McGuire, Thaddeus S. Machnik, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL,

Joseph M. Polick, City of Chicago, Department of Law, Chicago, IL, for Anthony Maslanka.

John F. McGuire, Thaddeus S. Machnik, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Joseph M. Polick, City of Chicago, Department of Law, Chicago, IL, for John Paladino, Kenneth Boudreau, Michael Kill and Fred Bonke.

David William Andich, Andich & Andich, Rock Island, IL, David J. Philipps, Beeler, Schad & Diamond, P.C., Chicago, IL, for Chicago Reader, Inc. and John Conroy.

David J. Philipps, Beeler, Schad & Diamond, P.C., Chicago, IL, for Citizens Alert.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Presently pending before the Court are two motions which seek to obtain certain documents previously designated as confidential by the City of Chicago. In this case, the plaintiff, Marcus Wiggins, a 13 year old juvenile, alleged that the defendants, Jon Burge, former commander of Area 3 Detectives, Leroy Martin, former Superintendent, Chicago Police Department, Sgt. John Byrne, Detectives James O'Brien, Anthony Maslanka, Kenneth Boudreau, Michael Kill, and Sgt. Fred Bonke and the City of Chicago, tortured him pursuant to a police department policy, custom and practice under 42 U.S.C. § 1983. On the eve of trial, the case was settled by agreement of the parties. On October 10, 1996, the Court entered an Agreed Order of Dismissal and dismissed the case with prejudice.

During discovery, the plaintiff requested and received the following documents from the defendants: (1) Office of Professional Standards ("OPS") investigative files and administrative reviews, recommendations and findings in this particular case and ten other alleged police torture cases; (the following is a list of the requested files: Gregory Banks, CR # 134947 and 188617, Darrell Cannon, CR # 134723, Philip Adkins, CR # 142201, Lavert Jones and Thomas Craft, CR # 200390, Michael Johnson, CR # 125071, plaintiff Marcus Wiggins, CR # 193591, Andrew Wilson, CR # 123543, the People's Law

Office, CR # 188624, Donald White, CR # 169867, TyShaun Ross, CR # 185626, Grayland Johnson, CR # 168190, and Stanley Wrice, CR # 202019); (2) portions of the Goldston Report and (3) Police Foundation Memorandum dated July 30, 1992. In a letter dated April 15, 1996, plaintiff's counsel agreed that the documents would be considered confidential under the terms of a proposed protective order in *Swygert v. City of Chicago, et al.,* 94 C 7032. The *Swygert* proposed protective order provided that certain documents produced by the defendants during discovery were to remain confidential, and that upon final termination of the action, the parties would return the materials within 60 days. However, there is no indication in the court docket of the Swygert case that the court ever entered a formal protective order or made an affirmative finding of "good cause" as required by Fed.R.Civ.P. 26(c).

On October 24, 1996, the plaintiff filed a motion to strike the confidential designation of certain documents produced during discovery by the defendant City of Chicago. John Conroy of the Chicago Reader, Inc., the Citizens Alert, and the Task Force to Confront Police Violence, petitioned to intervene in support of the plaintiff's motion to strike the confidential designation. The Court granted them leave to intervene. These intervenors have filed a motion to obtain access to the confidential documents. The Fraternal Order of Police petitioned to intervene in support of the defendants, and the Court granted its motion. Presently, the Court is considering only the plaintiff's and intervenors' motions to strike the confidential designation on certain documents produced in discovery by the City of Chicago.

*Analysis*

The plaintiff and intervenors contend that, since this Court never issued a formal protective order pertaining to the documents produced during discovery by the City of Chicago, these documents should be made part of the public record of this litigation. They also assert that no good cause exists at this time to keep the disputed records confidential. In the alternative, the plaintiff and the intervenors argue that if the Court determines that a protective order exists, the

Court should apply a "balancing of interests test" in determining whether or not to modify the protective order. The defendants argue (1) that the plaintiff and intervenors are seeking to modify the already existing protective order, (2) that the plaintiff does not have a right to disseminate information gathered during pretrial discovery, and (3) that the intervenors do not have a right of access to this information.

■ We first consider the issue of whether any Court has issued a protective order covering the OPS investigative files and administrative reviews, recommendations and findings in this particular case and ten other alleged police torture cases, the Goldston Report, and the Police Foundation Memorandum. Certainly this Court never entered a formal protective order in this case. Thus, we must examine whether the *Swygert* court entered a formal protective order.

■ Generally, "pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceeding." *American Tel. & Tel. Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.1978). But Fed.R.Civ.P. 26(c) provides that:

> upon motion by a party or by the person from whom discovery is sought ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense ...

The burden to show good cause for a protective order is upon the party seeking the order. *See General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973); *In re "Agent Orange" Product Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987).

■ During discovery, the parties agreed to have the documents remain confidential. This agreement is substantiated by the April 15, 1996 letter detailing the proposed protective order. However, "[e]ven if the parties agree that a protective order should be entered, they still have 'the burden of showing that good cause exists for issuance of that order.' " *Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir.1994) (quoting *Public Citizen v. Liggett Group,*

*Inc.,* 858 F.2d 775, 789 (1st Cir.1988)). The City of Chicago never sought to have the *Swygert* court make a finding of good cause. Thus, the *Swygert* court never made an initial determination of good cause or issued a formal protective order.

■ Since there never was a formal protective order issued by the *Swygert* court, we must make an initial determination of whether good cause exists for the continued nondisclosure of the documents in dispute. The defendants allege that the factors in favor of nondisclosure are (1) the privacy interests of the police officers; (2) the chilling effect on internal use of such records; (3) the possibility that the charges are false; and (4) the lack of a sufficient public interest. The plaintiff and intervenors assert that the public interest overrides any and all of these factors and thus, there is no good cause for a protective order.

■ The district court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). Good cause is the only statutory requirement for determining whether or not to issue a protective order. *Id.* at 37, 104 S.Ct. at 2209–10. Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir.1987). In deciding whether good cause exists, the district court must balance the interests involved: the harm to the party seeking the protective order and the importance of disclosure to the public. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787–89 (3d Cir. 1994); *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973); *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir.1987). Some factors to consider in making this determination are privacy interests, whether the information is important to public health and safety and whether the party benefiting from the confidentiality of the protective order is a public official. *Pansy,* 23 F.3d at 787–88. This list is not exhaustive and the court must consider the facts and circumstances of each case in making the good cause determination. *Id.* at 789.

The defendants assert that there is a lack of sufficient public interest in the disclosure of the disputed files. This Court disagrees. The documents in issue pertain to specific police officers and internal investigative administrative files dealing with alleged police torture. Police officers are public servants sworn to serve and protect the general public. The general public's health and safety are at issue whenever there are serious allegations of police torture. The manner in which such allegations are investigated is a matter of significant public interest. The real issue for this Court to decide is whether the specific harm to the defendants outweighs the significant public interest in the disclosure of the disputed files.

■ The defendants maintain that the police officers' privacy interest is a factor weighing against disclosure. "Privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Id.* at 787–88. Performance of police duties and investigations of their performance is a matter of great public importance. Much of the Goldston Report, the 10 designated CR files and the Police Foundation Memorandum are already a matter of public record. This has led to many articles being published about the allegations of police torture. Many of the defendants were identified as being involved in the alleged torture in the documents released in another case, *Fallon v. Dillon,* 90 C 6722. Also, any sensitive information in the documents such as the police officers' home addresses and phone numbers, has already been redacted.

The defendants contend that releasing this information will have a chilling effect on future police internal investigations. However, this Court agrees with its distinguished colleague in New York, Judge Weinstein, that the threat of future disclosure of this type of information in civil rights litigation is "probably not of great import to the officers at the time they file their reports." *King v. Conde,* 121 F.R.D. 180, 192 (E.D.N.Y.1988). Before determining that there is a chilling effect, the

court should have some empirical evidence that police officers conceal or distort statements in their internal reports. *Id.* The defendants have provided no such evidence.

Moreover, as noted by Judge Weinstein in *King,* the court in *Mercy v. County of Suffolk,* 93 F.R.D. 520 (E.D.N.Y.1982) correctly pointed out that:

> No legitimate purpose is served by conducting [police internal] investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to ensure that these investigations are carried out in an evenhanded fashion that the statements are carefully and accurately taken, and that the true facts came to light, whether they reflect favorably or unfavorably on the individual police officers involved or on the department as a whole.

*Id.* at 522. Thus, this Court believes that the release of the disputed files at this point of time will not undermine the overall effectiveness of internal investigations.

Finally, the defendants contend that the allegations of police torture may be false and therefore should remain confidential until proven. But lawsuits are filed against police officers every day and are a matter of public record. The allegations contained in these lawsuits may or may not be true. The general public is sophisticated enough to understand that a mere allegation of police torture, just like a lawsuit, does not constitute actual proof of misconduct. While it is true that the requested information concerns the internal investigative processes of the police department, there is an important public interest at stake—the health and welfare of the general public and the integrity of the police department. The public has a right to know how matters concerning their daily protection are being investigated and handled. If it were not for this type of public information, allegations of police torture might go unnoticed—seriously jeopardizing the safety of the community at large. In essence, this Court concludes that the allegations of police misconduct in the disputed documents before the Court must receive public exposure in order to insure that the significant public interest is served.

As Martin Luther King, Jr. stated in his now famous letter from the Birmingham County Jail in April of 1963:

> Like a boil that can never be cured as long as it is covered up but must be opened with all its pus-flowing ugliness to the natural medicines of air and light, injustice must likewise be exposed, with all of the tension its exposing creates, to the light of human conscience and the air of national opinion before it can be cured.

Similarly, this Court concludes that the allegations of police misconduct contained in the disputed files must be exposed to the light of human conscience and the air of natural opinion.

After reviewing the relevant motions and responses and after an *in camera* review of the disputed documents, we conclude that public interest far outweighs any harm to the police officers and thus, there is no good cause to keep the documents confidential. Most of the documents have already been redacted to remove any personal and sensitive information. The defendants have not shown that the privacy interests of the police officers, the alleged chilling effect to internal investigations and the possibility of false allegations outweigh the significant public interest in the disclosure of these documents. The public has a right to know whether allegations of police torture are appropriately investigated and resolved by the City of Chicago.[1]

### CONCLUSION

For the reasons stated herein, we grant plaintiff's and intervenors' motion to strike the confidential designation on the following documents: (1) OPS investigative files and administrative reviews, recommendations and findings in this particular case and ten other alleged police torture cases; (the fol-

---

1. We need not address the issue of modifying the protective order because we have determined that a formal protective order was never issued.

lowing is a list of the requested files: Gregory Banks, CR # 134947 and 188617, Darrell Cannon, CR # 134723, Philip Adkins, CR # 142201, Lavert Jones and Thomas Craft, CR # 200390, Michael Johnson, CR # 125071, plaintiff Marcus Wiggins, CR # 193591, Andrew Wilson, CR # 123543, the People's Law Office, CR # 188624, Donald White, CR # 169867, TyShaun Ross, CR # 185626, Grayland Johnson, CR # 168190, and Stanley Wrice, CR # 202019); (2) portions of the Goldston Report; and (3) Police Foundation Memorandum dated July 30, 1992. Plaintiff's motion to strike the confidential designation on certain documents produced by City of Chicago [78–1] and the intervenors' motion to obtain access to these documents [81–1] are hereby granted.