ANDREW CORPORATION, a Delaware Corporation, Plaintiff/Counter-Defendant,

v.

Alan J. ROSSI, Defendant/Counter-Plaintiff.

No. 96 C 4018.

United States District Court, N.D. Illinois, Eastern Division.

July 30, 1998.

Kathleen Mulligan of Gardner, Carton & Douglas, Chicago, representing Plaintiff.

Jeffrey Todd Gilbert of Sachnoff & Weaver, Chicago, representing Defendant.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on Plaintiff's Motion for Protective Order pursuant to Federal Rule of Civil Procedure 26(c)(7). For the following reasons, Plaintiff's motion is denied.

### BACKGROUND

Plaintiff Andrew Corporation ("Andrew") is an international manufacturer of telecommunications network hardware, and works to establish networks in all corners of the globe by participating in joint ventures with local businesses. (Defendant's Answer, Affirmative Defenses, Counterclaims, and Jury Demand [Answer] ¶ 21 .) This litigation involves Andrew's attempts to establish telecommunication networks in the newly emancipated Russian republics. (Answer ¶ 22.) Defendant Alan Rossi's relationship with Andrew began in the spring of 1994, when he was hired as a consultant to assist with Andrew's Russian joint ventures. (Answer ¶ 26.) Mr. Rossi proved to be so valuable that, in December of 1994, he was offered a position as Vice President of Andrew Telecom (Andrew's division overseeing all joint ventures). (Answer ¶ 30.) In September of 1995, Mr. Rossi was promoted to President of Andrew Telecom. (Answer ¶ 30.) Then, in 1996, the parties' comradeship failed. For reasons still unclear to this Court, Mr. Rossi was terminated on February 26, 1996. (Answer ¶ 44.)

The termination was not amicable, and Mr. Rossi's repeated suggestions of legal action prompted Andrew to initiate this case in Illinois state court on May 30, 1996. (Notice of Removal at 1.) Andrew sought a declaratory judgment absolving it from any severance liability to Mr. Rossi. (Notice of Removal at 1.) Mr. Rossi counterclaimed breach of contract, promissory and equitable estoppel, fraud, and bad faith termination. (Answer ¶ 16.) The case was removed to federal court on July 2, 1996.

The action is still in the discovery stage. In response to Mr. Rossi's discovery request of eighty-eight separate document categories, Andrew seeks a protective order pursuant to

Rule 26(c)(7) for the following: (1) personnel information regarding current and former Andrew employees; (2) work orders, designs and/or other documents related to Andrew's manufacturing process; (3) financial information regarding Andrew and Mr. Rossi, including but not limited to revenues and profits/loss figures; (4) Andrew's and Mr. Rossi's contracts, sales documents, business strategies and technical plans, including oral or written negotiations and preparations, and analyses and summaries of plans and strategies, whether in draft or final form; and (5) the names of potential customers of Mr. Rossi and Andrew. (Protective Order Regarding Discovery of Confidential Business Information, April 8, 1998 at 2.)

The parties have repeatedly attempted, with little success, to agree to a joint protective order. Twice before Andrew has petitioned unilaterally for a protective order. The first motion (September 18, 1996) was denied, and the second (November 20, 1996) was withdrawn when Andrew prematurely moved for summary judgment. On April 8, 1998, Andrew presented this Court with its current (and third) motion for a protective order.

## DISCUSSION

■ "As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *American Tel. and Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1978). However, there exists an exception to this presumption. Federal Rule of Civil Procedure 26(c)(7) states:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not

be revealed or be revealed only in a designated way ....

FED. R. CIV. P. 26(c)(7).

This Rule facilitates discovery. If they suspect that their trade secrets may fall into the wrong hands, parties may be uncooperative with respect to discovery requests. Assuring the safety of these sensitive disclosures often has the effect of encouraging the apprehensive litigants to fully cooperate with the discovery process. *In re Krynicki*, 983 F.2d 74, 75 (7th Cir.1992). Therefore, to facilitate discovery, "[c]onfidential information is customarily made available ... under a protective order, and the district court has substantial discretion to decide which information should be protected and to frame the order." *Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1346 (7th Cir.1986). This discretion, though, is limited by certain qualifications.

### A. Procedure for Obtaining a Rule 26(c)(7) Protective Order

■ To obtain a Rule 26(c)(7) protective order, the movant must show that (1) the interest for which protection is sought is an actual trade secret or other confidential business information protected under the Rule, and that (2) there is good cause for the protective order. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D.Ill. 1993) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)); *cf. Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D.Ill. 1997) (requiring an affirmative showing of good cause by movant for all Rule 26(c) protective orders) *appeal dismissed sub nom., Wiggins v. Martin*, 150 F.3d 671, 673 (7th Cir.1998). When these showings are made, the burden shifts to the respondent to demonstrate that the need for discovery outweighs the need for privacy. *Culinary Foods*, 151 F.R.D. at 300–01 (citing *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 545 (N.D.Ind.1991)). The district court will often balance the competing interests and fashion a protective order limiting the disclosure to persons for the purposes of the lawsuit only. *Julius M. Ames Co. v. Bostitch, Inc.*, 235 F.Supp. 856, 857 (S.D.N.Y.1964).

### 1. *Actual Trade Secrets*

█ When deciding whether proprietary business information requires protection as a Rule 26(c)(7) trade secret, courts have often looked to § 757 of the Restatement of Torts for guidance:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which give him an opportunity to obtain an advantage over competitors who do not know or use it.

RESTATEMENT OF TORTS § 757. b (1939); *United States v. IBM*, 67 F.R.D. 40, 46 n. 9 (S.D.N.Y.1975) ("The Restatement definition [of trade secrets] has been supported in both state and federal courts."). Factors to consider in determining whether information is of this character include: the extent to which it is known outside the business; the extent to which it is known by employees and others involved in the business; the measures taken to guard the information's secrecy, the value of the information to the business or its competitors; the amount of time, money, and effort expended in the development of the information; and the ease or difficulty of duplicating or properly acquiring the information. *IBM*, 67 F.R.D. at 46–47.

█ Andrew's only support for its motion comes from the affidavit of its Vice President, Gregory Maruzak ("Maruzak Aff."). The Affidavit states that all of the information covered by Andrew's proposed order is maintained as confidential, kept in locked files, and access is granted only to employees and consultants on a need-to-know basis. (Maruzak Aff. ¶¶ 4–5.) According to Mr. Maruzak, all such items are clearly marked as confidential, proprietary information. (Maruzak Aff. ¶ 6.) All Andrew employees are required to sign a confidentiality agreement upon employment (Maruzak Aff. at Ex. 3); and when employees leave Andrew, they are required to sign an exit statement, reminding them of their responsibilities under the confidentiality agreement. (Maruzak Aff. at Ex. 4.)

The Court is satisfied that Andrew regards nearly everything concerning its business as confidential. It has provided this Court with ample evidence regarding the extensive security measures it employs to protect the security of its office. However, this is all Andrew has done. Without more than Andrew's self-serving statements, this Court cannot determine whether such assertions are legitimate, or merely due to an overdeveloped sense of self-importance. Such situations are exactly why Rule 26(c)(7) has its second requirement: good cause.

### 2. *Requirement of Good Cause*

█ To establish good cause under Rule 26(c), the courts have generally required "specific examples of articulated reasoning," *Cipollone*, 785 F.2d at 1121, as opposed to "stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978). With respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a " 'clearly defined and very serious injury' " to its business. *Culinary Foods*, 151 F.R.D. at 300 n. 1 (quoting *IBM*, 67 F.R.D. at 46).[1]

Andrew has not made any specific showing of good cause for its proposed order. Instead, it urges the Court to consider the "common sense" approach to the good cause requirement endorsed in *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F.Supp. 866, 891 (E.D.Pa.1981). The *Zenith* court acknowledged the specificity principle, but held that, in the area of confidential

---

1. An example of sufficient specificity is found in *John Does I–IV v. Yogi*, 110 F.R.D. 629 (D.D.C. 1986). In that case, the court entered a limited protective order for certain proprietary trade secrets in the meditation industry when the defendant was able to show that a specific competitor, Swami Prakshanand Saraswati of the International Society of Divine Love, was likely (and eager) to gain access to Yogi Maharishi Mahesh's secrets because the plaintiffs were devoted followers of the Swami. *Yogi*, 110 F.R.D. at 631.

An example of insufficient support is found in *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 23 (S.D.N.Y.1971), where the court held that an attorney's affidavit, merely stating that discovery would lead to the revelation of trade secrets, did not pass the threshold of specificity.

342

business information, "hard and fast rules ... are inappropriate. Frequently the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts." *Zenith*, 529 F.Supp. at 891.

■ Andrew has culled the words "common sense" and "patent" from *Zenith*, and automatically assumed that any potentially sensitive information must be protected. However, Andrew overlooks the *Zenith* court's definition of "common sense," which includes as a fundamental ingredient the court's "understanding of the background facts" of the case. *Id.* A showing of good cause is only unnecessary when the court's review of the record makes plain the need for a protective order. Considering the court's broad discretion in evaluating and shaping these orders, it stands to reason such flexibility should be present in the process.

However, in the case at bar, the Court has only been told that Andrew builds communications networks in Russia, Mr. Rossi once worked for Andrew, and now he does not. Given such a limited understanding of the background facts, this Court can find nothing which would spur it to enter a protective order for (any of) the many proposed categories, absent Andrew's showing of good cause.

Andrew also disregards the Supreme Court's determination that " '[t]here is no absolute privilege for trade secrets and similar confidential information.' " *Federal Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (quoting 8 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2043, at 554 (1970)). This Court recognizes that "privileged" information is excluded from discovery while "protected" information is restrictively included. However, to rule that certain confidential business information may be categorically protected treads dangerously close to the Supreme Court's prohibition. Furthermore, to do so would essentially create an exception to the procedure outlined in Rule

26(c) where no such exception exists. This Court declines to create such an exception.

■ Thus, Andrew's insistence that the *Zenith* court's position on the good-cause requirement should control is unpersuasive.[2] Correspondingly, Andrew's continuous conclusory assertions that any unprotected disclosures in the five extremely broad categories it proposes will result in "significant competitive harm to Andrew's market position," (Maruzak Aff. ¶ 6), do not satisfy Rule 26(c)'s requirement of good cause.

## B.  The Scope of Andrew's Proposed Order

Because Andrew has repeatedly petitioned this Court to issue a broad and sweeping protective order, it is appropriate to comment briefly on the proper scope of a Rule 26(c)(7) protective order.

"Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact-finding." *Grove Fresh Distribs., Inc., v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994). Anything interfering with the sunlight's power as a "disinfectant" must be carefully restricted. *Wilk v. American Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir.1980).

Andrew's proposed order is not narrowly constructed. The proposed categories of protection are vague, covering everything from specific personnel files to the speculative-at-best class of "potential customers." Also, Andrew's proposal permits the disclosing party to designate material as confidential without showing good cause. This leaves the burden and expense of challenging the designation on the party seeking discovery. These types of orders, commonly referred to as "umbrella" protective orders, are typically permitted only in cases of extremely complex litigation, and then with much hesitation. *Yogi*, 110 F.R.D. at 632 (finding an umbrella order overly burdensome for the court).

2.  The Court notes that *Zenith* is seventeen years old, and from the Eastern District of Pennsylvania. Furthermore, while it was cited in *Culinary*

*Foods*, the citation occurred in a footnote, and only served as a contrast to the specificity rule, which was the focus of the footnote.

The present litigation is not complex; it is a simple case between an employer and its former employee. While it is true that Mr. Rossi has made eighty-eight discovery requests, this is not unreasonable. Furthermore, to enter an order similar in scope to Andrew's proposal would fly in the face of Rule 26. The case law is clear: protective orders which would remove portions of the judicial process from public scrutiny cannot be granted with reckless abandon. The public airing of grievances is the fundamental means by which the integrity of the judicial process is preserved. Without a showing of good cause, this principle simply cannot be ignored.

## CONCLUSION

Andrew has failed to make the necessary showings for the entry of a Rule 26(c)(7) protective order. There is nothing in the record from which the Court can glean the necessary good cause to independently enter a protective order.[3] This Court has neither the expertise in the field of telecommunications, nor the time and resources to gain such expertise necessary to judge the unsupported motion for a protective order at bar. Today's determination does not mean that Andrew has no legitimate interests in need of protection. Rather, it merely means that, to date, this Court has not been apprised of those interests.

The parties are urged to meet and attempt to come to an agreement which will not falter under the scrutiny of this Court. **IT IS THEREFORE ORDERED** that:

Andrew's Motion for Protective Order be, and the same hereby is, **DENIED.**

---

**3.** The Court notes that, at points, Andrew has shown some cause for its proposed protective order. However, the Court is concerned that Andrew has made these showings despite itself, more a product of happenstance than the diligent effort required by the Federal Rules of Civil Procedure. Furthermore, these showings fall far short of what is required for the five proposed categories. Therefore, rather than encourage a shotgun approach to showings of good cause, the entire motion is denied.

The Court also notes that the Supplemental Affidavit of Gregory Maruzak, which was filed without leave of court, is stricken.