**STAR SCIENTIFIC, INC., A Delaware corporation, and Star Tobacco & Pharmaceuticals, Inc., A Virginia corporation, Plaintiffs,**

v.

**Steve CARTER, In his official capacity as Attorney General for the State of Indiana, Defendant.**

**No. IP 01–0838–C–T/K.**

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 15, 2001.

Andrew W. Hull, Hoover Hull Baker & Heath, Indianapolis, IN, Patrick M. McSweeney, McSweeney & Crump, Richmond, VA, for plaintiffs.

Thomas M. Fisher, Indianapolis, IN, Gary D. Wilson, Wilmer Cutler & Pickering, Washington, DC, for defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND ENTRY ON COURT ORDERED PROTECTIVE ORDER

BAKER, United States Magistrate Judge.

### I. Background

On July 12, 2001, Plaintiffs Star Scientific, Inc. and Star Tobacco & Pharmaceutics, Inc. filed an amended complaint against Steve Carter, in his official capacity as Attorney General for the state of Indiana. The

amended complaint alleges that the Qualifying Statute enacted by the Indiana General Assembly and the Master Settlement Agreement ("MSA") entered into between forty-six states, the District of Columbia, and five other federal jurisdictions with the major cigarette manufacturers in the United States violate the Compact and Commerce Clauses of the United States Constitution. Further, the amended complaint alleges that the Qualifying Statute, standing alone, violates the Equal Protection, Due Process, and Commerce Clauses of the United States Constitution.

Plaintiffs moved for a preliminary injunction to prevent enforcement of the M.S.A. and Qualifying Statute. Pursuant to an Agreed Entry, the parties are engaging in expedited discovery. In responding to Defendant's discovery requests, Plaintiffs state they produced documents and information setting forth confidential information and trade secrets, including:

1. the identification of its customers and information relating to their purchasing habits;

2. pricing information;

3. sales techniques and sales volumes;

4. the operation and handling of its tobacco-cutting barns and the processing of burley tobacco; and

5. contracting policies and practices with tobacco growers.

(Pls.' Br. for Protect. Ord., pp. 3–4). In tendering a proposed protective order to the Court, Plaintiffs seek to shield these documents from discovery by third parties, notably, its competitors in the tobacco industry and the National Association of Attorneys General (NAAG), believing good cause exists for the entry of its proposed protective order.

Defendant claims that Plaintiffs' proposed protective order is overbroad, and that the information Plaintiffs seek to protect are not trade secrets. For the reasons set forth below, the Court DENIES Plaintiffs' motion for entry of its proposed protective order. However, the Court holds that the information Plaintiffs seek to protect constitute trade secrets under the Indiana Uniform Trade Secrets Act, I.C. § 24–2–3–2, and finds that good cause exists for the entry of a protective order. Therefore, the Court sets forth in this Order parameters for a protective order governing the proceedings in this case.

## II. Discussion

### A. Protective Order Under Rule 26(c)(7)

■ Generally, "pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Andrew Corporation v. Rossi*, 180 F.R.D. 338, 340 (N.D.Ill.1998), *quoting American Tel. and Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1978). *See also Bryan v. Eichenwald*, 191 F.R.D. 650, 652 (D.Kan.2000) ("the public has an interest in everything that occurs in [a] case, whether at trial or during the discovery stage of the litigation.").

However, there exists an exception to the presumption of disclosure. Under Federal Rule of Civil Procedure 26(c)(7) [1], the movant must show that: (1) the interest for which protection is sought is an actual trade secret or other confidential business information protected under the rule; and (2) there is good cause for the entry of a protective order. *Rossi*, 180 F.R.D. at 340, *citing Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D.Ill.1993).

The rule facilitates disclosure. "If [parties] suspect that their trade secrets may

1. Fed. R.Civ. P. 26(c)(7) states:
(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be take may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way.

fall into the wrong hands, parties may be uncooperative with respect to discovery requests. Assuring the safety of these sensitive disclosures often has the effect of encouraging the apprehensive litigants to fully cooperate with the discovery process." *Rossi*, 180 F.R.D. at 340, *citing Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir.1992).

Recently, the Seventh Circuit addressed the issue of protective orders in cases involving potential trade secrets. In *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943 (7th Cir.1999), the court noted it would be permissible for parties to keep trade secrets out of the public record provided that the judge, among other requirements, "satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets." *Id.* at 946. *Accord Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir.2000); *In re Bridgestone/Firestone, Inc.*, 198 F.R.D. 654 (S.D.Ind.2001).

### 1. Trade Secrets

■ In this case, the Plaintiffs dispute whether the information they provided to Defendant in response to discovery requests constitutes either a trade secret or confidential business information.

In determining whether the information Plaintiffs seek to shield is a trade secret or a proprietary business interest entitled to protection under Rule 26(c)(7), the Court looks to the Indiana Uniform Trade Secret Act (IUTSA)[2] for guidance.[3] The IUTSA defines a "trade secret" as:

■ information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily

2. The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

3. In circumstances similar to this, courts have looked to the Restatement of Torts to determine whether one possesses a protectable trade secret. The Restatement of Torts defines a trade secret

ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Burk v. Heritage Food Service Equipment, Inc.*, 737 N.E.2d 803, 813 (Ind.Ct.App.2000), *citing* I.C. § 24–2–3–2. Thus, in Indiana, a "protectable trade secret" has four characteristics: "(1) information; (2) which derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) the subject of efforts reasonable under the circumstances to maintain its secrecy." *Ackerman v. Kimball Int'l, Inc.*, 634 N.E.2d 778, 783 (Ind.Ct.App.1994), *vacated in part, adopted in part*, 652 N.E.2d 507 (Ind.1995).

Plaintiffs set forth five categories of documents which they claim qualify as trade secrets. These documents have already been produced to Defendant. Without citation to authority, Defendant claims that the information Plaintiffs assert as trade secrets do not qualify as such. The Court categorizes the information to two categories, and addresses each below.

### (a) customer lists, information relating to consumer purchasing habits, pricing information, and sales techniques and sales volumes

Indiana courts have held that customer lists and pricing information are protectable trade secrets. *See Ackerman*, 634 N.E.2d at 783 (after analyzing IUTSA, court found that customer and supplier lists and pricing information are trade secrets); *Michels v. Dyna–Kote Indus., Inc.*, 497 N.E.2d 586, 588–89 (Ind.Ct.App.1986) (customer lists may be interpreted as trade secrets).

as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement (First) of Torts § 757, comment b. *See Andrew Corporation v. Rossi*, 180 F.R.D. 338, 341 (N.D.Ill.1998).

■ Similarly, research and data compiled by Plaintiffs in this case, such as consumer purchasing habits and sales techniques are protectable trade secrets since the information is created to enhance their business and give them a competitive edge over other cigarette manufacturers. *See e.g., Burk,* 737 N.E.2d 803, 808–813 (Ind.Ct.App.2000) (enforcing a trade secret agreement which prohibited the sharing of research and data relating to the former employee's business).

The information is not readily obtainable, and possesses economic value. In addition, Plaintiffs have taken steps to maintain the secrecy of the information by "restricting the access to it within the company to those who have a need to know and act on such information, by restricting the physical access to the companies' files and records to Plaintiffs' employees and legal counsel, by instructing their employees that such proprietary information is to be carefully guarded and not shared with others ..." (Pls.' Br. for Protect. Ord., Ex. 2, ¶ 5).

Therefore, the Court finds that information relating to Plaintiffs' customer lists and consumer purchasing habits, pricing information, and sales techniques and sales volumes are all protectable trade secrets.

**(b) Information relating to the operation and handling of Plaintiffs' tobacco-cutting barns and the processing of burley tobacco, including a contract with a local farmer**

■ Plaintiffs seek to protect information relating to "StarCure" barns and its methods for cutting tobacco, including a Barn Certification Agreement attached to a contract with a local tobacco farmer setting forth the requirement for the set up of a StarCure barn, agronomic practices and instructions regarding a sprayer setup, and information on how tobacco must be grown, harvested, cured, and delivered. (Pls.' Reply, p. 6).

■ The IUTSA expressly contemplates a "trade secret" as encompassing either a "formula," "program," "method," "technique," or "process." The techniques Plaintiffs employ to process their product are also trade secrets. *See e.g., Weston v. Buckley,* 677 N.E.2d 1089, 1092 (Ind.Ct.App.1997), *trans. denied* (paintless dent removal deemed a trade secret); *Michels,* 497 N.E.2d at 588–89 (formulas and their mixing instruction can be properly classified as a trade secret); *Burk,* 737 N.E.2d 803 (finding a protectable trade secret the marketing plans or strategies of a former employer).[4]

Similar to the information set forth in subsection (a), Plaintiffs' techniques of manufacturing its product is not generally known and possesses economic value. Plaintiffs have taken reasonable steps to maintain the secrecy of the information as evidenced by the affidavit of its corporate officer Dean. (Pls.' Br. for Protect. Ord., Ex. 2, ¶ 5). Accordingly, the Court finds that information relating to the operation and handling of its tobacco-cutting barns, the processing of burley tobacco, and a contract with a local farmer are protectable trade secrets.

**2. Good Cause**

■ Now that Plaintiffs make a showing that they possess protectable trade secrets, they must show good cause for the entry of a protective order. The law requires the Court to make a determination of good cause before sealing any part of the record in a case. *See Citizens First Nat'l Bank,* 178 F.3d at 944; *Makar–Wellbon v. Sony Electronics, Inc.,* 187 F.R.D. 576, 577 (E.D.Wis. 1999). Determining whether good cause exists "requires a balancing of the potential harm to litigants' interests against the public's right to obtain information concerning judicial proceedings." *Makar–Wellbon,* 187 F.R.D. at 577. The moving party must show

---

4. Plaintiffs claim their contract with a local farmer is a protectable trade secret since the Barn Certification Agreement is attached to it. One state court has held that contracts between a business and its customers may constitute a trade secret. *See State ex rel. The Plain Dealer v. Ohio Dept. of Ins.,* 80 Ohio St.3d 513, 687 N.E.2d 661 (Ohio 1997) (portions of documents submitted by insurer to Department of Insurance for review of proposed acquisition of insurer were "trade secrets," insofar as they consisted of financial data that was relevant to insurer's ongoing business, that was not directly relevant to proposed transaction; examples included terms of contracts with customers and affiliates).

"that disclosure will work a clearly defined and serious injury." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir.1994).

Plaintiffs make a sufficient showing of good cause for the Court to enter a protective order. In the event that their trade secrets and confidential information are subjected to public dissemination (most notably, to one of its competitors), Plaintiffs may suffer great economic harm. For instance, discovery of Plaintiffs' customer lists, research relating to consumer purchasing habits, pricing information, and sales techniques and volumes may lead to a competitive disadvantage, and would permit Plaintiffs' competitors to utilize the discovery process for improper purposes. *See Ackerman*, 634 N.E.2d at 783 (competitive disadvantage may be gained by obtaining customer lists and pricing data). Similarly, a competitor's access to information relating to how Plaintiffs process their product, its research and development, along with the terms and conditions of a contract with one of their customers, also present potential dangers and may lead to a windfall to the discovering party.

In sum, the potential dangers Plaintiffs face if a competitor gains access to its trade secrets and confidential information outweigh any legitimate interest one may possess in obtaining these documents. As a result, the Court finds that Plaintiffs set forth good cause for the entry of a protective order.

### B. Defendant's Objections to General Provisions in the Proposed Protective Order

Defendant claims Plaintiffs' proposed protective order is deficient in several respects. The Court addresses each objection separately.

### 1. "Carte Blanche" On Designation of Documents

Defendant claims that paragraph one of the proposed protective order, which states "[t]he parties and their counsel know what constitutes a trade secret or confidential research, development or commercial information," gives the parties "unfettered discretion to designate the materials confidential." (Def.'s Opp., pg. 3). The Seventh Circuit rejected this broad approach giving the parties authority to designate documents as confidential. *See Citizens First National Bank of Princeton*, 178 F.3d at 944 (court granting "carte blanche" to either party to seal whatever portions of the record they wanted was improper; the parties to a lawsuit are not the only people who have a legitimate interest in the record complied in a legal proceeding). *See also Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996) ("District Court cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public. It certainly should not turn this function over to the parties, as it did here ... The protective order in this case allows the parties to control public access to court papers, and it should be vacated or substantially changed.").

Therefore, the Court finds that this clause giving the parties unilateral authority to designate documents as confidential is overbroad.

### 2. Restraints Aimed at National Association of Attorneys General

██ In paragraph 3(b) of the proposed protective order, Plaintiffs seek to limit access to the information produced in the litigation to counsel of record and authorized staff. Defendant asserts this cause is aimed at excluding counsel from the National Association of Attorneys General (NAAG). Further, paragraph 3(d), dealing with expert witnesses, explicitly states Defendant may not consult with an expert retained by the NAAG.

Courts have articulated to the general public and the media a Constitutional right of access to criminal and civil court proceedings. *See e.g. Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Globe Newspaper Co. v. Superior Court for County of Norfolk*, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907); *John Does 1 Through 30 Inclusive v. Franco Productions*, 2000 WL 968827, *4

(N.D.Ill.2000). This right of access has a basis in the First Amendment. *Globe Newspaper Co.*, 457 U.S. at 603, 102 S.Ct. 2613.

■■■■■ However, this right of access is not absolute. Public disclosure of discovery materials is "open to the public unless the court finds that its records are being used for improper purposes."[5] *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994), *citing United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989). *See also Citizens First National Bank*, 178 F.3d at 946 ("[m]ost [courts] endorse a presumption of public access to discovery materials"). When dealing with discovery materials, the standard for access is identical to that of Federal Rule of Civil Procedure 26(c) (i.e. a showing of good cause by the party seeking protection). *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir.2001).

■■■ Due to multi-jurisdictional litigation between Plaintiffs and other states' attorneys general, Plaintiffs seek to limit the NAAG's access to any information exchanged between the parties in this present litigation, stating that the other various Attorneys General are not a party to this litigation and may attempt to use the discovery process "in matters unrelated to this litigation." (Pls.' Reply, p. 7). This, standing alone, is insufficient to establish good cause under Rule 26(c). If the Court were to enter the proposed provision excluding the NAAG from assisting Defendant in the present case, it would inhibit Defendant's ability to consult expert witnesses familiar with similar litigation.

The Court finds that Plaintiffs' attempt to subvert Defendant from seeking the assistance of the NAAG is improper. However, the NAAG and its experts are bound by the Court's Order on designation of evidence as trade secrets or confidential information, and the information it discovers can only be uti-

lized for the purposes of the present litigation before the Court.

### 3. Restraints Aimed at Other Tobacco Manufacturers

Plaintiffs state that disclosure of confidential information to third parties such as other cigarette manufacturers would cause them to "suffer a competitive disadvantage." (Pls.' Br. for Protect. Ord., p. 7). As noted above, the Court agrees. Disclosures to third parties may be made for an improper purpose, such as to gain a competitive advantage in the marketplace. *See e.g., Corbitt*, 879 F.2d at 228, *quoting Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (" 'common law right of access is a flexible concept, which allows the district court to deny access where its records would be used for 'improper purposes' specifically, the discretionary decision whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to ... [the] production [of the particular document in question].' " *See also U.S. v. Edwards*, 672 F.2d 1289, 1293 (7th Cir.1982) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.... [T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.").

As a result of this potential danger, the Court finds that information that it deemed trade secrets shall be limited to the parties, counsel of record, their respective agents, all who are bound by the restraints set forth in this Order.

### 4. List of Individuals Who Access Confidential Information

■■■ Further, paragraph 9 imposes a duty on Defendant at the conclusion of the

---

5. However, in this district, the parties do not file discovery materials with the Court "[b]ecause of the considerable costs to the parties of furnishing discovery materials, and the serious problems encountered with storage." S.D. Ind. L.R. 26.2. Although the local rules are silent on this issue, as a matter of practice, a nonparty seeking dis-

closure of discovery materials exchanged between the parties to the litigation is encouraged to contact the counsel of record to obtain the desired information. If these informal attempts are unsuccessful, the nonparty may file a motion to compel discovery with the Court as an interested party to obtain the information.

litigation to provide a list of names and addresses of all individuals exposed to the confidential information. The Court finds that this provision is reasonable, and is not a clause out of the ordinary since the individuals who are permitted to view the information are limited pursuant to this Order. It is not unduly burdensome for Defendant to provide a list of people who came into contact with the information.

The Court orders that no later than sixty days upon the completion of this litigation, Defendant shall provide a list of all individuals who came into contact with confidential information, including the person's business address and respective relationship to Defendant.

### 5. Filing Documents With the Court Under Seal

Finally, paragraphs 10 and 11 of the proposed protective order deal with disclosure of materials designated as "Confidential." Paragraph 10 provides that in the event any documents are filed with the Court marked "Confidential," the Clerk of the Court shall keep such documents under seal. Paragraph 11 states that if confidential materials are presented "orally" during pretrial proceedings or at trial, the presenting party must move the Court to close the courtroom.

This district does not have a local rule on filing documents under seal with the Clerk's office. However, pursuant to the district's publication entitled "Sealed Document Procedures," a party attempting to file a sealed document must:

1. Provide the Clerk's Office with a copy of a previously entered protective order directing that the document or documents are to be sealed; or

2. Provide the Clerk's Office with a motion requesting that a document be sealed along with a proposed order at the same time that the proposed sealed document is being tendered to the Clerk's Office; or

3. Cite 31 U.S.C. § 3730(b). [This statute allows a private individual to office bring an action on behalf of the U.S. Government, and gives the Clerk's authority to file a complaint under seal without prior court approval.]

(United States District Court's publication on "Sealed Document Procedures," Feb. 7, 1997, page 2). Therefore, in the event Plaintiffs wish to file documents under seal, they shall follow the guidelines set forth in the "Sealed Document Procedures" (a copy available in the Clerk's office)and the instructions in this Order. In any event, documents filed under seal shall not be made public or unsealed unless done so by order of the Court.

With regard to the provision set forth in paragraph 11, the Court finds that Plaintiffs imposing a duty to move the Court in the event that protected information is presented is unduly burdensome. If Plaintiffs believe that protected information may be presented at a pretrial proceeding or at trial, Plaintiffs may at that time move to seal the record or to limit the access to courtroom proceedings.

### 6. Utilization of Discovery Material Upon Completion of Litigation

■■ Plaintiffs' concern regarding utilization of confidential or trade secret discovery upon completion of this litigation is well taken. (See Pls.' Proposed Protect. Ord., ¶ 14). Therefore, within sixty days after the completion of this litigation, all documents exchanged between the parties in discovery which the Court deems trade secrets or confidential information shall be destroyed. Thereafter, Defendant shall serve on Plaintiffs an "affidavit of destruction," attesting that the Attorney General is in compliance with this provision in the Order.

### C. Applicability of the Indiana Public Records Law

■■ Defendants also object to the entry of the proposed protective order, claiming that the information should be made available to the public pursuant to the Indiana Public Records Law, I.C. § 5–14–3–1 et seq. However, this law provides an exception relevant to this inquiry in section 4(a), which states:

Section 4(a): The following public records are excepted from section 3 of this chapter and may not be disclosed by a public agency,

unless access to the records is specifically required by a state or federal statute or is ordered by a court under the rules of discovery:

\* \* \* \* \* \*

(4) Records containing trade secrets;

(5) Confidential financial information obtained, upon request, from a person . . .

I.C. § 5–14–3–4.

Since the Court has already held that the information Plaintiffs seek to protect constitutes trade secrets, the Court likewise finds that this information also falls under the exception for trade secrets set forth in the Public Records Act. As a result, Defendants may not defeat the entry of a protective order by invoking the Public Records Law.

## III.  Conclusion

Accordingly, the Court DENIES Plaintiffs' motion for entry of its proposed protective order. However, the Court holds that Plaintiffs establish good cause for the entry of a protective order to secure their trade secrets. Therefore, for the reasons set forth above, the Court ORDERS that the conduct of discovery shall be governed by the following parameters:

1. Access to the information and documentation which the Court deems in this Order as trade secrets shall be limited to the parties, counsel of record, and their respective employees designated to assist counsel in this litigation;

2. Defendants are permitted to consult representatives from the National Association of Attorneys General in order to utilize its services for the purposes of the present litigation. Any information the NAAG discovers can be utilized for the purposes of this litigation only, and shall not be used in proceedings against Plaintiffs that are pending or which have occurred in another cause or in another jurisdiction, or any anticipated or future litigation not already pending;

3. No later than sixty days upon completion of this litigation, Defendant shall provide a list of all individuals who came into contact with trade secrets or confidential information, including the person's business address and respective relationship to Defendant;

4. In the event the parties file documents under seal deemed in this Order as either confidential or trade secrets, the party shall file the guidelines set forth in the United States District Court, Southern District of Indiana's publication on "Sealed Document Procedures," a copy of which can be obtained in the Clerk's office.

5. Documents filed under seal shall not be made public or unsealed unless done so by order of the Court.

6. Within sixty days after the completion of this litigation, all documents exchanged between the parties in discovery which the Court has deemed trade secrets or confidential information shall be destroyed. Thereafter, Defendant shall serve on Plaintiffs an "affidavit of destruction," attesting that the Attorney General is in compliance with this provision in the Order;

7. If Plaintiffs, in good faith, believe that trade secrets or confidential information will be presented in a pretrial proceeding or at trial, and that such presentation is likely to result in irreparable harm, the Court will entertain a motion filed by the Plaintiffs to place such pretrial proceeding under seal.

*So ordered.*