The movant's showing must consist of "a particular and specific demonstration of fact," Gulf Oil Co. v. Bernard , 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) ; see also Global , 133 F.Supp.3d at 1084, supported, if possible, by "affidavits and concrete examples," Arvco Container Corp. v. Weyerhaeuser Co. , No. 1:08-cv-548, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009). "[S]tereotyped and conclusory statements," Gulf Oil , 452 U.S. at 102 n.16, 101 S.Ct. 2193, *852 such as "broad allegations of potential harm or competitive injury," Global , 133 F.Supp.3d at 1084 (internal quotation omitted), are not enough. Neither are allegations of injury that are "speculative." Boyd Grp. , 2015 WL 5445751, at *1. All doubts about whether material should be kept confidential must be resolved in favor of disclosure. Hitz , 2017 WL 444073, at *3 ; Global , 133 F.Supp.3d at 1084.
Whitebox has not made the necessary showing.
First , it has not done enough to specify the documents in question. Its sparse motion describes the motions simply as "internal communications and certain communications and agreements between Cowen Special Investments and Whitebox Advisors." (Mot. at 4). Whitebox does supply more detail about the documents in its reply, dividing them into five categories. But the categories are so broad as to be largely uninformative:
• An "Assignment and Release Agreement negotiated and executed between Whitebox and Cowen." (Reply at 4). What the agreement concerns, apart from the transferred claim, is unclear. Whitebox describes the agreement as having been executed "pursuant to Rule 408 of the Federal Rules of Evidence" (id. ), but what that means is anyone's guess. The evidence rules do not authorize people to enter into contracts.[5]
• Communications between Whitebox and Cowen in January 2017 concerning "the negotiation of a document related to Whitebox's purchase of the Claim from Cowen." What kind of "document" the document might be Whitebox does not explain. Nor does Whitebox explain how the document is "related to" the purchase.
• Communications between Cowen and Whitebox in March 2017 "concerning the Claim." Apart from providing a date, this description says nothing. The entire dispute on which the parties are taking discovery "concerns the claim."
• A letter from Whitebox to Cowen in April 2017 "concerning the Claim." Again, the subject matter of the letter, a letter "concerning the claim," is too broad to be meaningful or informative.
• A series of "Bloomberg chat messages" between Whitebox employees or between Whitebox and Cowen in early 2017. Presumably, these are some form of email or text message. Their subject is not described.
Second , Whitebox has failed to demonstrate these documents are confidential. The motion asserts they "constitute confidential communications." (Mot. at 4). That is no more than a conclusion; the motion offers no facts from which the conclusion might be drawn. Whitebox likewise asserts in its reply that the documents contain "Whitebox's confidential commercial information." (Reply at 2; see also id. at 4). The reply then elaborates that the documents reflect Whitebox's "buying, selling, contract negotiation, and contract formation processes and strategies," as well as "contract terms and pricing information." ( *853 Id. at 4-5). But describing the information this way does not compel the conclusion that it is also confidential. It would have helped had Whitebox at least identified the business it is in and described its operations. But it has done neither, making it impossible to evaluate whether the information is the kind such a business would ordinarily keep confidential. Nor has Whitebox asserted that it takes any particular measures to keep the information confidential. Cf. Andrew Corp. v. Rossi , 180 F.R.D. 338, 341 (N.D. Ill. 1998) (accepting claim of confidentiality where movant furnished an affidavit describing in detail efforts to keep information secret).
Third , Whitebox has not shown that disclosure of the information would cause it harm. Whitebox says in its motion that disclosure would affect its ability "to negotiate future claims trades." (Mot. 4). On this point, as with the question of confidentiality, Whitebox elaborates somewhat in its reply, insisting that disclosure of the information would give its competitors "crucial insight into its commercial operations and strategies, including its negotiation tactics and financial bearings." (Id. ; see also id. at 4).[6]
But this, too, is no more than a conclusion-a "broad allegation[ ] of potential harm or competitive injury," Global , 133 F.Supp.3d at 1084 (internal quotation omitted), not the "particular and specific demonstration of fact" necessary to obtain a protective order, Gulf Oil , 452 U.S. at 102 n. 16, 101 S.Ct. 2193. Whitebox has not explained why disclosure of the information (assuming the documents actually contain it, something Whitebox's vague descriptions do not establish) would cause Whitebox the requisite "clearly defined and serious injury." Hitz , 2017 WL 444073, at *3. Whitebox has furnished no "affidavits" or "concrete examples" supporting its nebulous allegations of harm. Arvco , 2009 WL 311125, at *5.[7] Because Whitebox has not seen fit to identify its business or describe the business's operations, it is unclear whether any aspect of the business might conceivably require secrecy. It is not even evident that Whitebox has competitors who might profit from the information. See Andrew Corp. , 180 F.R.D. at 342 (denying motion for protective order in part because movant failed to provide the court with more than "a limited understanding of the background facts").
In short, Whitebox's bald conclusions about the confidentiality of the information and the threat of harm from its disclosure simply do not demonstrate the "good cause" necessary for entry of a protective order-especially in light of the broad categories of documents it wants to protect. See id. at 341-42 (refusing to enter "umbrella" protective order that would keep confidential "five extremely broad categories" of material where movant offered no more than "conclusory assertions" of "competitive harm"). Far more was necessary.
3. Conclusion
The motion of Whitebox Advisors, LLC, for a protective order is denied.

If Whitebox means the agreement represents a settlement of some kind (since Rule 408 concerns offers and negotiations of compromise), that fact alone does little to identify the document. If Whitebox is suggesting that the agreement is confidential because Rule 408 would make it inadmissible at trial, Whitebox cites no legal authority suggesting that all inadmissible documents are automatically confidential. Rule 26(b)(1) suggests otherwise. Fed. R. Civ. P. 26(b)(1) ("Information within [the] scope of discovery need not be admissible in evidence to be discoverable."). (Because the agreement is between Whitebox and Cowen, it does not appear Rule 408 would bar its admission in any event. Rule 408 renders inadmissible evidence relating to the compromise of "the claim," Fed. R. Evid. 408(a)(1)(2), meaning the claim to be tried. Here, that claim arises out of a dispute between Whitebox and Earl, not Whitebox and Cowen.)

Earlier in the reply, Whitebox makes the same assertion in a different way, declaring: "If the information Whitebox seeks to protect is made public, it will provide Whitebox's competitors in all future trades with direct insight into its confidential buying, selling, contract negotiation, and contract formation processes and strategies." (Id. at 4).

The only declaration Whitebox submits is the sworn declaration of one its lawyers. (Reply, Ex. A). The declarant identifies the documents Whitebox wants to keep confidential, describing them the same way the reply does. (Id. ¶¶ 4-5). She does not assert-even as a conclusion-that their disclosure would harm Whitebox.